DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, in which the trial court granted summary judgment to appellee, George J. Windau, and dismissed a complaint filed by appellant, James W. Adams, Sr., in an action to recover unpaid rent. On appeal, appellant sets forth the following assignment of error: *Page 2 
 {¶ 2} "The trial court erred in finding in it's [sic] opinion that no genuine issue of fact exists with respect to unpaid rent owed by appellee."
 {¶ 3} The relevant, undisputed facts are as follows. Appellee is appellant's former son-in-law. For 13 years, appellee and his ex-wife, Evette, lived in a house owned by appellant at 1712 Potomac in Toledo, Ohio. The parties separated in October 2003, and were divorced in 2005. Five separate lawsuits were filed between the parties, beginning in 2004. The fifth lawsuit, which is the subject of this appeal, was filed on December 6, 2006. In that complaint, appellant alleged that appellee owed him $60,750, representing 13 years' worth of unpaid rent.[1] On February 5, 2007, appellee filed an answer.
 {¶ 4} On September 28, 2007, appellant filed a motion for summary judgment and a memorandum in support. In his motion, appellant stated that appellee agreed to pay rent in the amount of $700 per month for the 13 years that appellee and Evette together lived at 1712 Potomac, for a total of $30,100.[2] Appellant further stated that, after giving appellee credit for several payments made in 2003, the remaining amount due was $19,950. *Page 3 
 {¶ 5} Included in the record was appellant's own affidavit, in which appellant stated that that appellee "knew that $700.00 per month rental was due as that was the amount that [appellee] agreed to when he lived at 1712 Potomac, Toledo, Ohio." Also included were copies of checks written by appellee to appellant, and a copy of a letter from appellee to appellant dated September 5, 2003, in which appellee stated:
 {¶ 6} "Evette says that I owe you some back rent and I hope to clear it up with you and settle up with you as best that I can. According to Evette, I owe you $1600.00 per month in back rent for the period of 1991 to the present.
 {¶ 7} "That comes to $225,600.00 * * *.
 {¶ 8} "I hope that this is not the correct figure. But if it is I will do the best that I can to pay you back, but I cannot pay it in one lump sum. * * *
 {¶ 9} "I have always thought of you as a reasonable man. I hope that we can come to an agreement that is satisfactory to all concerned. Thank you."
 {¶ 10} That same day, appellee filed a cross-motion for summary judgment, in which he stated that appellant's claim for unpaid rent is barred by res judicata and collateral estoppel. In support, appellee cited Toledo Municipal Court case no. CVI04-03112. In that case, appellant responded to appellee's claim for the return of $700 allegedly paid to appellant as "rent" in October 2003, by arguing that appellant was a "family member" and not a tenant. See Windau v. Adams (Apr. 30, 2004), Case *Page 4 
No. CVI04-03112, Tol. Mun. Ct, Small Claims Division. (After reviewing the evidence, the magistrate dismissed appellee's claim, finding that it "lack[ed] merit." Id.)
 {¶ 11} Appellee also argued in support of summary judgment that no agreement for appellee to pay appellant rent was ever finalized between the parties. Relevant exhibits attached to appellee's cross-motion for summary judgment included appellee's affidavit; the letter from appellee to appellant dated September 5, 2003, another letter dated September 9, 2003; and a copy of the Toledo Municipal Court magistrate's decision dated April 30, 2004.
 {¶ 12} In his affidavit, appellee stated that, while he and Evette lived at 1712 Potomac, appellee gave appellant money each month to "help out with his expenses." Initially, appellee paid appellant $250 per month, and later he increased the amount to $350 per month.
 {¶ 13} In the letter dated September 9, 2003, appellee stated:
 {¶ 14} "As of this point in time I have not received any word about the amount of back rent that I owe you and the date that I must turn in my key per your orders through your agent, Evette. * * * Take all the time you need to give me this information. I find it confusing however, and it makes it difficult for me to plan my orderly departure (from the house on Potomac) * * *. To keep things on track I am sending another check for $700. I will try to send you $700 per week until the back rent debt that I owe to you is cleared. From my calculations I should be able to clear the $225,600.00 that I owe you in *Page 5 
about six and one half years at $700 per week. I hope that this is acceptable. If there is any interest charge on this debt, I would be grateful if you told me as soon as it would be convenient for you. I hope that there are no `surprise interest rates' along with the `surprise debt' of this magnitude.* * *"
 {¶ 15} On October 12, 2007, appellee filed a "brief in opposition to appellant's motion for summary judgment, in which he asserted that "there was never a meeting of the minds" as to the issue of rent; therefore, no enforceable contract was formed between the parties that obligated appellee to pay rent.
 {¶ 16} On December 28, 2007, with leave of court, appellant filed a sur-reply, in which he stated that the parties had an enforceable contract to pay rent. Appellant also asserted that "the principles of unjust enrichment would apply in this case as well."
 {¶ 17} On January 9, 2008, the trial court filed an opinion and judgment entry in which it found that, at best, the letter from appellee to appellant dated September 5, 2003, constituted "an acknowledgment that [appellee] may owe back rent." However, the trial court also found that the letter did not contain a meeting of the minds as to the essential terms necessary for an agreement; specifically, "the amount of past due rent now due and owing." Accordingly, the trial court granted appellee's cross-motion for summary judgment on the issue of unpaid rent, and dismissed appellant's claim for unpaid rent. A timely notice of appeal was filed in this court on February 7, 2008. *Page 6 
 {¶ 18} In his assignment of error, appellant asserts that the trial court erred when it found that no contract was formed with regard to unpaid rent, and granted summary judgment to appellee on that basis. In support, appellant argues that appellee acknowledged his obligation to pay rent in the letter dated September 5, 2003; the record contains copies of alleged "rent" checks written by appellee, two of which were written on September 5, 2003; and appellant stated in his own affidavit that appellee was aware of the terms and amount of rent that was due.
 {¶ 19} We note at the outset that an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129; Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 20} Initially, the party seeking summary judgment bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The motion may be filed "with or without supporting affidavits[.]" Civ. R. 56(A). Thereafter, the burden shifts to the non-moving party to show why summary judgment is *Page 7 
inappropriate. Civ. R. 56(E). "If the non-movant fails to respond, or fails to support its response with evidence of the kind required by Civ. R. 6(C), the court may enter summary judgment in favor of the moving party." Snyder v. Ford Motor Co., 3d Dist. No. 1-05-41, 2005-Ohio-6415, ¶ 11; Civ. R. 56(E).
 {¶ 21} The payment of rent is an obligation between a landlord and a tenant that is established pursuant to a contract. Georgetown ParkApartments, v. Woernley (1996), 112 Ohio App.3d 428, 431. "`A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' Perlmuter Printing Co. v. Strome,Inc. (N.D.Ohio 1976), 436 F.Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus.Relations (1991), 61 Ohio St.3d 355, 369, 575 N.E.2d 134." Kostelnik v.Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16.
 {¶ 22} In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange.Tiffe v. Groenenstein, Cuyahoga App. No. 80668, 2003-Ohio-1335, at ¶ 25, citing Restatement of the Law 2d, Contracts, supra, at 52, Section 17, comment c; Reedy v. Cincinnati Bengals, Inc. (2001),143 Ohio App.3d 516, 521. As part of a meeting of the minds, "`there must be a definite offer on *Page 8 
one side and an acceptance on the other.' Garrison v. DaytonianHotel (1995), 105 Ohio App.3d 322, 325, 663 N.E.2d 1316." Miller v.Lindsay-Green, Inc., 10th Dist. No. 04AP-848, 2005-Ohio-6366, ¶ 63. In other words, for a contract to be binding, the parties "must have a common and distinct intention communicated by each party to the other."Bradley v. Farmers New World Life Ins. Co. (1996), 112 Ohio App.3d 696,710, citing Lawler v. Burt (1857), 7 Ohio St. 340.
 {¶ 23} In this case, as noted by the trial court, the record contains evidence that appellee was aware that appellant expected reimbursement for unpaid rent after appellee and Evette separated. However, there is no evidence in the record that appellant ever directly responded to appellee's inquiries as to the amount of rent owed. To the contrary, the total amount of rent referred to by both parties has varied widely, ranging from $225,600 down to $19,950. In addition, appellant's affidavit, in which appellant stated that appellee knew he was expected to pay $700 per month in rent for 13 years, is not sufficient to establish that such a contract ever existed. See Wolf v. Big LotsStores, Inc., 10th Dist. No. 07AP-511, 2008-Ohio-1837. (A party may not use his or her own self-serving affidavit to establish a genuine issue of material fact if such affidavit contains "nothing more than bare contradictions of other competent evidence and conclusory statement of law." Id, ¶ 12, citing Bell v. Beightler, Franklin App. No. 02AP-569, 2003-Ohio-88.) *Page 9 
 {¶ 24} This court has reviewed the entire record that was before the trial court and, on consideration thereof, finds no evidence that there was a common and distinct intent for appellee to pay appellant an agreed-upon amount of rent while he and appellant's daughter, Evette, lived at 1712 Potomac. Accordingly, the trial court did not err when it found that appellant has not established that the parties had a "meeting of the minds" sufficient to establish that such a contract existed, and granted summary judgment to appellee on that basis. We further find that there remains no other genuine issue of material fact and, after considering the evidence presented most strongly in favor of appellant, appellee is entitled to summary judgment as a matter of law. Appellant's sole assignment of error is not well-taken.
 {¶ 25} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 10 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
[1] The complaint also alleged that appellee owed appellant $11,837.69 for unpaid utilities, $3,552.75 for repairs to the leased premises, and $6,338.60 for credit card debt incurred by appellee's ex-wife. However, those claims are not before the court in this appeal.
[2] The record does not contain an explanation as to why appellant's claim was reduced from $60,750 to $30,100. *Page 1