DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which denied appellant's motion for partial summary judgment and to dismiss appellee's complaint. For the reasons set forth below, this court affirms the judgment of the trial court. *Page 2 
 {¶ 2} Appellant, Consolidated Environmental Services, Inc. ("CES"), sets forth the three following assignments of error:
 {¶ 3} "NO. 1 THE TRIAL COURT ERRED AS A MATTER OF LAW BY APPLYING OHIO LAW DESPITE THE PARTIES' AGREEMENT THAT MICHIGAN SUBSTANTIVE LAW WAS CONTROLLING AND SHOULD BE APPLIED TO GOVERN THE CONTRACT.
 {¶ 4} "NO. 2 THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT'S MOTION TO STAY OR DISMISS APPELLEE'S COMPLAINT, COMPEL ARBITRATION AND FOR PARTIAL SUMMARY JUDGMENT LIMITING DAMAGES BY HOLDING THAT THERE WAS NO EVIDENCE PRESENTED OF A MUTUAL ASSENT OR MEETING OF THE MINDS BETWEEN THE PARTIES, AND THAT THE RATE SHEET AND TERMS AND CONDITIONS DID NOT CONSTITUTE A CONTRACT BETWEEN THE PARTIES.
 {¶ 5} "NO. 3 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT APPELLANT WAIVED ITS RIGHT TO ENFORCE THE ARBITRATION PROVISION."
 {¶ 6} The following undisputed facts are relevant to the issues raised on appeal. This corporate liability dispute stems from an area fuel spill necessitating *Page 3 
costly environmental remediation. On November 25, 2005, a significant fuel spill incident occurred at the Toledo terminal of appellee, Delta Fuels, Inc. ("Delta"). On May 1, 2006, Delta filed a complaint alleging negligence against CES, an environmental engineering and consulting service provider. Delta had utilized the professional environmental services of CES for over a decade at the time of the incident.
 {¶ 7} The fundamental crux of the business relationship between the parties was for CES to devise, facilitate and maintain EPA compliance on behalf of Delta at the Front Street fuel terminal facility in Toledo. Delta asserted in its complaint against CES that negligence by CES in connection with Delta's Toledo facility caused or contributed to the fuel spill itself as well as the magnitude of damages precipitated by the spill.
 {¶ 8} On August 23, 2007, CES filed a motion to dismiss, compel arbitration, and for partial summary judgment. The asserted legal theory offered in support of the motion was wholly premised upon a form CES rate sheet that also delineated a multitude of terms and conditions.
 {¶ 9} CES asserted that a copy of this document was furnished to Delta at the commencement of their business relationship. CES claims that the delivery of *Page 4 
the document to a Delta representative culminated in an enforceable and controlling contract between the parties.
 {¶ 10} Given a lengthy intervening period of 13 years lapsing between the onset of the business relationship when the document was purportedly furnished to Delta and the fuel spill at issue, Delta's representative had no firm recollection of being provided with the form rate sheet. Regardless, he consistently denied that it would have constituted a legally enforceable contract between the parties dictating the resolution of this case.
 {¶ 11} On April 3, 2008, the trial court conducted an evidentiary hearing regarding the CES motion for summary judgment and dismissal based upon the alleged contract. On May 15, 2008, the trial court issued its written judgment.
 {¶ 12} The trial court denied CES's motion to dismiss, compel arbitration and for partial summary judgment. In determinative support of this ruling, the trial court explicitly held that CES furnished no evidence establishing mutual assent and a meeting of the minds between the parties in order to hold that the disputed rate sheet formed a contract between the parties. Given the finding that no such contract foreclosing appellant's complaint and mandating arbitration actually existed between the parties, appellee's motion was denied. Timely notice of appeal was filed. *Page 5 
 {¶ 13} Based upon our consideration of the inextricable connectivity of the assignments, we find that the root substantive basis of this appeal lends itself to an initial consideration of the second assignment of error. The remaining assignments of error are premised on a finding of the existence of a valid and enforceable contract between the parties. As such, it must first be determined whether the underlying CES rate sheet established a legally enforceable contract between the parties. If not, the secondary assignments are moot.
 {¶ 14} In the second assignment of error, CES asserts that the trial court erred in denying the motion to dismiss, compel arbitration and for partial summary judgment. CES contends that the trial court specifically erred in holding that it had failed to establish the fundamental contract element of mutual assent and a meeting of the minds.
 {¶ 15} We have carefully reviewed the trial court judgment being appealed in order to determine the proper standard of review. The parties differ, with one asserting that an abuse of discretion standard is proper and the other contending that de novo is the appropriate standard.
 {¶ 16} We note that portions of the judgment, in isolation, would be reviewed pursuant to the abuse of discretion standard. However, the summary judgment component pervades the disputed ruling. As such, we find that the *Page 6 
broader summary judgment de novo standard is the most appropriate and prudent standard to be applied to our review of this matter.
 {¶ 17} It is well established that an appellate court employs the de novo standard of review in considering summary judgment determinations. As such, we utilize the same standard as the trial court. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 18} The crux of CES's position stems from its claimed action in furnishing Delta with a copy of a form rate sheet, setting form terms and conditions, at the commencement of the business relationship between the parties. CES maintains that this culminated in a valid and enforceable contract between the two entities controlling the handling of the events underlying this case.
 {¶ 19} In conjunction with this, CES contends that the failure of anyone from, or on behalf of, Delta to actively object to any of the proposed terms and conditions enumerated in the rate sheet should be construed as indicia of assent and a meeting of the minds. *Page 7 
 {¶ 20} It is black letter law that a properly created contract constitutes a set of defined promises actionable upon breach. The mandatory elements that must be demonstrated to have occurred in order to properly find the existence of a binding contract includes an offer, acceptance, contractual capacity, legality of subject matter, consideration, and the manifestation of a meeting of the minds so as to constitute mutual assent. Adams v. Windau, 6th Dist. No. L-08-1041,2008-Ohio-5023.
 {¶ 21} The disputed and determinative element in this case is a meeting of the minds constituting mutual assent. A purported contract cannot be enforced in the absence of a demonstration of a meeting of the minds. Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985.
 {¶ 22} CES asserts that the testimony of the relevant Delta official was contradictory and inconsistent. We have carefully reviewed the record of evidence. We do not concur in CES's assessment. David Cacioppo, a key Delta witness, had testified in his deposition that he did not recall whether or not he had been furnished with the underlying rate sheet given the length of time that had transpired.
 {¶ 23} In a subsequent affidavit filed during the course of summary judgment proceedings, Cacioppo expresses certainty that he had not been presented with the *Page 8 
rate sheet. In support of this more definitive position, Cacioppo explains that had the proffered rate sheet with the terms and conditions been presented to him, as a matter of practice he would not have automatically and unilaterally consented to its provisions. Cacioppo testified that given the importance and ramifications, he would have submitted such a document to legal counsel for their review and consideration.
 {¶ 24} The record in this case contains no objective or compelling evidence that anyone by or on behalf of appellee received, reviewed, considered, and assented to the suggested terms and conditions attached to the rate sheet. There is no persuasive evidence in the record constituting adequate indicia of a meeting of the minds so as to constitute mutual assent. We have independently reviewed and considered the record of evidence. We find that it fails to establish that the rate sheet, even if it was provided, created a valid and enforceable contract between the parties. We find appellant's second assignment of error not well-taken.
 {¶ 25} Our de novo determination that there was no contract in existence between the parties renders the remaining two assignments of error premised upon such a contract moot. As such, we find appellant's first and third assignments of error not well-taken. *Page 9 
 {¶ 26} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., William J. Skow, P.J., and Thomas J. Osowik, J., concur. *Page 1