GARRISON, Appellee,

v.

DAYTONIAN HOTEL et al., Appellants.

[Cite as *Garrison v. Daytonian Hotel* (1995), 105 Ohio App.3d 322.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14993.

Decided June 28, 1995.

*Thomas Angelo III,* for appellee.

*John E. Holcomb,* for appellants.

---

GRADY, Judge.

Defendants, Daytonian Hotel Joint Venture, Salim A. Jetha, and Daytonian Hotel Investors, Inc., d.b.a. Radisson Hotel, appeal from a judgment in which the trial court found that the parties had agreed to settle the age-discrimination claim of plaintiff Louis D. Garrison for $20,000 and in which the court ordered enforcement of that agreement.

On November 18, 1993, plaintiff Garrison filed a complaint alleging that the defendants had deprived him of his employment on account of his age when they terminated his employment at their hotel in Dayton. He requested compensatory damages in an unspecified amount and punitive damages of $75,000. On December 28, 1993, the defendants filed their answer, denying any liability.

Defendants retained attorney Mary Biagioli to act as their trial counsel in the litigation. After evaluating the case, attorney Biagioli recommended that the defendants settle the claim for $20,000. Defendant Jetha, on behalf of himself and the other defendants, in which he was a principal or officer, authorized Biagioli to offer the plaintiff $20,000 to settle the case.

On June 13, 1994, Biagioli made a formal offer to counsel for plaintiff Garrison to settle the case for $20,000. Subsequently, on June 22, 1994, at a pretrial conference, counsel for plaintiff Garrison made a counteroffer to settle for $50,000. The trial court proposed that the parties consider $26,000, but neither side supported that proposal. Trial was set to begin on July 11, 1994.

On July 5, 1994, counsel for the plaintiff telephoned attorney Biagioli and stated that the plaintiff would accept the defendants' offer of $20,000 to settle his claim. Biagioli agreed with that proposal and also agreed to prepare the release and settlement documents. However, later that same day defendant Jetha told Biagioli that the offer to settle for $20,000 was no longer open and that he would not pay it.

On July 7, 1994, Garrison filed a motion to enforce the July 5 settlement agreement. Motions and memoranda in opposition were filed by the defendants. The matter was heard by the court, and on November 30, 1994, the court found that an agreement had been made and ordered the defendants to pay the plaintiff $20,000. The defendants have appealed, and present two assignments of error.

## First Assignment of Error

"Where a counteroffer is made to an offer of settlement, that counteroffer acts to extinguish all previous offers, and the original offer cannot be accepted at a later date without a clear renewal of that offer. As no valid contract exists, a court may not enforce such a settlement agreement."

An agreement between a plaintiff and a defendant that the plaintiff will compromise a claim for relief and release a defendant from liability upon the defendant's payment of an amount of money is a contract, and like all contracts requires a meeting of the minds in order to be binding on the parties. *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 2 OBR 632, 442 N.E.2d 1302. As a part of that meeting of the minds, there must be a definite offer on one side and an acceptance on the other. *Id.* No particular form is necessary to constitute an offer or acceptance. 15 Ohio Jurisprudence 3d (1995), Compromise, Accord, and Release, Section 4. Whether that has occurred is a question of fact to be determined from all the relevant facts and circumstances.

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." 1 Restatement of the Law 2d, Contracts (1981), Section 24. An offer is binding on the offeror when accepted by the offeree. An offer remains open for acceptance by the offeree until it is revoked by the offeror, rejected by the offeree, or until the time for its acceptance has expired. *Id.,* Section 36.

When an offer is rejected, it ceases to exist, and a subsequent attempted acceptance is inoperative to bind the offeror. A rejection is implied in a counteroffer, which is "interpreted as being in effect a statement by the offeree not only that he will enter into the transaction on the terms stated in his counteroffer, but by implication that he will not assent to the terms of the original offer." 1 Williston On Contracts (4 Ed. Lord Ed.1990) 631, Section 5:3. An offeree's power to conclude the bargain through his acceptance of the offer is, therefore, terminated by his making of a counteroffer. Restatement, *supra,* Section 39(2).

In finding that the plaintiff had the power to bind the defendants by accepting their offer to settle for $20,000, the trial court reasoned that the defendants had not withdrawn that offer. The record supports the finding that they had not. However, the plaintiff's counteroffer of $50,000 terminated his own power to bind the defendants to their prior offer of $20,000. Therefore, the defendants' failure to expressly terminate their offer does not resolve the issue.

Attorney Biagioli testified that when plaintiff's counsel telephoned her on July 5, 1994, he suggested a settlement of between $20,000 and $50,000. She told him

that was not acceptable. Plaintiff's counsel proposed that he would accept the $20,000 offer, and Biagioli agreed to settle the case on that basis.

■ A ratification is a confirmation of a previous, voidable act that operates to give the act the effect it was originally intended to have. It is equivalent to a previous authorization and relates back in time to when the act ratified was done.

Though the plaintiff's $50,000 counteroffer of June 22, 1994, terminated his power to bind the defendants to the $20,000 offer they made on June 13, 1994, attorney Biagioli's assent on July 5, 1994, to the plaintiff's proposal to settle for $20,000 ratified her client's previous offer, reviving in the plaintiff the authority to bind the defendants to that offer by accepting it, which the plaintiff did. Therefore, there was a sufficient meeting of the minds between the parties or their representatives on their behalf. The first assignment of error is overruled.

### Second Assignment of Error

■ "Where a party has revoked all authorization of its counsel to settle a claim, and has instructed that counsel to proceed to trial, a court may not enforce a settlement agreement entered into by the party's counsel without some evidence of renewed authorization."

■ Jetha conceded that he had authorized Biagioli to offer the plaintiff $20,000 to settle the case. After the plaintiff countered at $50,000, Jetha and Biagioli discussed the prospect of going to trial and she agreed to prepare for trial. Jetha, himself a lawyer, stated that he did not tell Biagioli to take the $20,000 offer "off the table" because he believed that the plaintiff's counteroffer had made it a nullity. He also believed that their trial preparation discussions implied a revocation of his prior authorization to Biagioli to settle the case and an understanding of that fact on her part.

Biagioli testified that she had no understanding when she agreed to settle for $20,000 on July 5, 1994, that Jetha had revoked her authority to settle on that basis. By implication, she was yet free to agree to the settlement that her client had authorized her to make.

■ Absent specific authorization, an attorney has no implied or apparent authority to compromise and settle his client's claims. *Morr v. Crouch* (1969), 19 Ohio St.2d 24, 48 O.O.2d 43, 249 N.E.2d 780. Here, Jetha conceded that he had authorized Biagioli to settle the case for $20,000. The only issue is whether that authority was subsequently withdrawn, either expressly or by implication.

The plaintiff's June 22, 1994 counteroffer may have terminated his power to accept the defendants' June 13, 1994 offer to settle for $20,000, but it did not operate to extinguish the authority which attorney Biagioli had been given by the defendants to settle for that amount. When the subsequent discussions between

Biagioli and Jetha concerning trial preparation took place, the parties were still substantially apart in their positions. The case was set for trial on July 11, 1994, though Jetha hoped to obtain a continuance to suit his plans for business travel. In this context, Biagioli might reasonably have believed that she retained the authority to settle for $20,000. Whether she did is a question of fact, which the trial court has resolved in her favor. That decision is supported by some competent, credible evidence, so we may not disturb it on appeal. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. The second assignment of error is overruled.

Having overruled both assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

BROGAN, P.J., and FREDERICK N. YOUNG, J., concur.