JOURNAL ENTRY AND OPINION
This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 25, the record of Cuyahoga County Court of Common Pleas, the briefs and the arguments of the parties.
Plaintiffs-appellants John and Ruth Watral ("appellants") appeal the final judgment entered in the Cuyahoga County Court of Common Pleas wherein the court granted the motion to enforce settlement agreement advanced by defendant-appellee, Tree Preservation Company Inc. ("appellee"), and dismissed appellants' action with prejudice. For the reasons stated below, we reverse the decision of the trial court and remand the matter for further proceedings.
The record demonstrates the following facts pertinent to this appeal. On May 5, 1998, appellants commenced the within action in a three-count complaint alleging that appellee intentionally entered their property and removed trees without authority, which removal diminished the value of their property and constituted both a trespass and a violation of R.C. 901.51. Discovery ensued and the matter was set for trial to commence on March 23, 1999. However, the trial did not go forward on that day and, by entry journalized on April 6, 1999, the court reset the trial to commence April 19, 1999 at 10:00 a.m. On April 15, appellee requested the court to "enforce settlement" of the matter asserting that a settlement had been reached on March 22, 1999. By journal entry, the court continued the April 19 trial date to May 26, 1999. On April 21, appellants opposed appellee's motion to enforce settlement. Appellants' motion was supported by affidavits in which they and their counsel denied that an agreement to settle the matter had been reached. On May 18, the court denied appellee's motion to enforce the settlement agreement. The trial date remained May 26, but on May 25 the court reset the trial to commence on July 21, 1999. On July 12, appellee moved the court to hold an evidentiary hearing on the motion to enforce settlement. On July 13, the court "upon consideration and good cause shown" scheduled an evidentiary hearing to be held July 19, 1999 on the previously denied motion to enforce settlement agreement.
Hearing on the matter went forward July 21, 1999. Initially, the record reveals that the court conducted a colloquy with counsel and permitted counsel for appellee to present his version of the settlement negotiations which took place on March 22 and 23. Appellee's counsel expressed his intent to examine appellants and their counsel at the hearing. Appellants' counsel indicated that he believed that the court intended to determine the issue only upon submitted affidavits. The court then questioned both counsel as to the steps taken during the settlement negotiations. The colloquy on the record demonstrates that counsel for appellants and appellee agree that on March 22 appellants' settlement demand was for the replacement of trees and $5,000 cash. Counsel for appellee offered to settle the matter for less than the $5,000 demand and left a telephone message evidencing a counter-offer of $4,000 on appellants' counsel's answering machine on the evening of March 22. On the morning of March 23, while awaiting the parties to appear for trial, counsel for appellee agreed to raise his settlement offer to $5,000, the amount originally demanded by appellants on March 22. Appellants' counsel advised appellants of the settlement proposal, but they rejected the offer.
Over objection by appellants' counsel, appellee called appellant Ruth Watral on cross-examination. Ms. Watral testified that on the day before trial she authorized her attorney to relay a settlement demand which included a $5,000 cash payment to appellee. That day appellee offered $3,500, which she rejected. Later that afternoon or evening, the appellee offered $4,000 again, which she rejected. After she and her husband discussed the matter that evening, she called her attorney to instruct him that they would no longer accept $5,000 in settlement of the case. On direct examination, Ms. Watral explained that on the evening before trial, after appellee rejected the $5,000 demand, she and her husband indicated to counsel that $5,000 was no longer acceptable.
Appellants' counsel was called on cross-examination. He stated that on the day before trial the main issue remaining in the settlement negotiations was the amount of money. He communicated to opposing counsel a demand of $5,000 cash was required to settle the case. However, appellee's counsel only offered $3,500 to settle and this offer was rejected by appellants. In a message left on appellants' counsel's voice mail, appellee's counsel increased the offer to settle to $4,000. Because appellee rejected appellants' settlement demand, appellants' counsel indicated that it was unnecessary to withdraw the $5,000 demand. On the morning of March 23, prior to the commencement of trial, counsel for appellee offered $5,000 to settle the matter. He told appellee's counsel that he would have to pass it through to his clients.
Next, appellee's counsel testified that on the day before trial appellants' settlement demand was $5,000. First, he offered $3,500 which was rejected; then, he increased the offer to $4,000. Appellants' counsel informed him that although the parties were only $1,000 apart, the matter would not settle for less than $5,000. The next morning he increased his offer of settlement to $4,500 to which appellants' counsel responded he would have to discuss the offer with his clients. He finally offered $5,000 and directed appellants' counsel to tell the court the matter is settled. At no time was the $5,000 settlement demand withdrawn.
Appellant John Watral testified that he authorized his counsel to settle the matter for $5,000, plus the planting of twelve trees. On the night before the trial, he was still willing to settle for $5,000; however, when no settlement occurred, he decided to go through with the trial. He was prepared on the morning of trial to go forward with a witness and the people involved.
Appellants' counsel testified that the demand made on behalf of his clients had been rejected by appellee three or four times. The night before trial he was not given any further terms of settlement by his clients. He said appellants had resigned themselves to having the case tried; they had experts coming to trial; their settlement offer was off the table. The morning of trial, when appellee offered $5,000, he was without authorization to settle and his clients rejected the offer.
At the close of the testimony, the court found that "[appellants' counsel] made a demand of [appellee's counsel of] $5,000, that the demand remained on the table, that appellee's counsel met and satisfied the terms of the demand.
Therefore, the terms of the settlement will be enforced by the court. * * *"
On July 27, 1999, the court journalized its judgment and dismissed appellants' action with prejudice. This appeal follows in which appellants advance a single assignment of error for our review.
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO ENFORCE SETTLEMENT INASMUCH AS APPELLANTS NEVER ACCEPTED APPELLEE'S COUNTEROFFER OF SETTLEMENT.
Urging reversal of the judgment of the trial court, appellants assert that the trial court granted the enforcement of an agreement which did not exist because appellants did not agree to the settlement. We agree.
"It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party." Continental v. Ferguson (1996), 74 Ohio St.3d 501, 502;Spercel. v. Sterling Industries (1972), 31 Ohio St.2d 36, 38; Bauerv. Bauer, (Apr. 2, 1981), Cuyahoga App. No. 42805, unreported. The Supreme Court of Ohio has held that "[a] release, or compromise agreement, is a particular kind of contract, and, like other contracts, requires a definite offer and an acceptance thereof."Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. The elements of a contract are offer and acceptance supported by valid consideration.Gruenspan v. Seitz (1997), 124 Ohio App.3d 197, 211. In Noroski,
the supreme court further stated that in order to have a valid release, there must be a meeting of the parties' minds. Id.; see, also, Rulli v. Fan Co. (1997) 79 Ohio St.3d 374, 376. Whether a meeting of the minds has occurred is a question of fact to be determined from all the relevant facts and circumstances. Garrisonv. Daytonian Hotel (1995), 105 Ohio App.3d 322, 325. Thus, in order to declare the existence of a contract, both parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain. Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus.Relations (1991), 61 Ohio St.3d 366, 369. An acceptance of an offer forms a binding contract only if it corresponds to the offer in every respect. If the offeror must assent to additional terms, as in the instant case, the reply is not acceptance but a rejection and a counteroffer. Foster v. Ohio State Univ. (1987), 41 Ohio App.3d 86,88.
Finally, "absent specific authorization, an attorney has no implied or apparent authority to compromise and settle his client's claims." Garrison v. Daytonian Hotel (1995), 105 Ohio App.3d 322,326, citing Morr v. Crouch (1969), 19 Ohio St.2d 24. Whether a party authorized the attorney to settle the case on certain terms is a question of fact, the resolution of which by the trial court shall not be disturbed on appeal if supported by some competent, credible evidence. Garrison, supra at 327, citing C.E. Morris Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at the syllabus.
In the case sub judice, it is clear from the undisputed facts in the record that there was no meeting of the minds of the parties. The record reveals that appellee terminated its power to accept appellants' original offer by making the March 22 counteroffer. The evidence further demonstrates that appellants rejected appellee's counteroffer to settle the matter for $4,000 on the evening of March 22. Thus, on the morning of March 23, appellants' offer to settle the case for $5,000 was no longer open to acceptance by appellee. Accordingly, appellee's March 23 offer to settle the matter for $5,000 could not operate as an acceptance of appellants' March 22 settlement demand. Therefore, we find that the trial court erred in its finding that the demand of $5,000 remained "on the table." No offer of settlement made by appellants remained "on the table" after appellee made its counteroffer of $4,000. See Foster, supra.
In addition, the evidence in the record is undisputed that appellants did not authorize their attorney to settle their case for $5,000 on the morning of March 23. Therefore, it can be said that no competent, credible evidence exists in the record which could support a conclusion that appellants' attorney was authorized to settle this matter for $5,000 on the morning of March 23. Thus, although appellee offered $5,000 to settle the case on the morning of March 23 and appellee's offer was properly conveyed by appellants' counsel to them, they had the right to reject appellee's settlement offer of $5,000 and they did reject it.
As a consequence of appellants' rejection of appellee's settlement offer, it is clear that no meeting of the minds in the settlement of this matter was reached. Therefore, we find that the trial court erred in granting the enforcement of a settlement contract which did not exist. Appellants' sole assignment of error is well-taken.
The judgment of the trial court is reversed and the within matter is remanded for further proceedings consistent with this opinion.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellants recover from appellee their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ TIMOTHY E. McMONAGLE JUDGE
 DIANE KARPINSKI, P.J. and JAMES D. SWEENEY, J., CONCUR.