[Cite as *Consolo v. Menter*, 2011-Ohio-6241.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

WILLIAM CONSOLO

    Appellant

    v.

RICK MENTER, et al.

    Appellees

C.A. No.     25394

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2007 08 5773

DECISION AND JOURNAL ENTRY

Dated: December 7, 2011

Per Curiam.

{¶1} Appellant, William Consolo, appeals the judgment of the Summit County Court of Common Pleas. This Court reverses.

I.

{¶2} Consolo and Rick Menter were business partners in a credit card processing venture. Menter acted as the operating member of the partnership, while Consolo purchased a membership interest and consulted in the operation of the business.

{¶3} Over time, Consolo became suspicious that Menter was engaging in fraudulent conduct and appropriating for himself hundreds of thousands of dollars rightfully payable to Consolo. On August 16, 2007, Consolo filed a complaint in the Summit County Court of Common Pleas against Menter, EMS Nationwide II, Ltd., and

the unknown shareholders, members, partners, and the legal and equitable owners of EMS Nationwide II, Ltd (hereinafter referred to as "Menter"). The complaint included claims for breach of fiduciary duty, restitution, breach of R.C. 1705.31, conversion, conspiracy, a shareholders' derivative action, receiver, civil theft, a request for temporary restraining order, and a request for injunctive relief. Prior to trial, the parties reached an agreement in which Consolo agreed to relinquish any ownership interest in the business and to settle the allegations in exchange for Menter's agreement to pay Consolo a sum of money. The agreement was effected through a series of documents, one of which included an agreed consent judgment entry in which Menter consented to a judgment in the amount of $500,000.

{¶4} When Menter discontinued making periodic payments to Consolo pursuant to their agreement, Consolo filed the consent judgment on December 9, 2009. Menter filed two motions on February 1, 2010, both of which were captioned, "Emergency Motion to Enforce the Settlement Agreement and for Relief from Judgment Pursuant to Civ.R. 60(B) with a Request for a Hearing." The trial court held a hearing on the motions on February 16, 2010. While the motions were similar in form and content, Menter asserted at the hearing that one motion was intended to be a motion to enforce the settlement agreement and vacate the judgment pursuant to Civ.R. 60(B), while the second was a motion to stay collection on the judgment under Civ.R. 62 while the trial court ruled on the motion to vacate.

{¶5} In its judgment entry, which was journalized on April 16, 2010, the trial court made the following findings with respect to the dispute in this case. The problems

with enforcement of the settlement agreement began when Menter, fearing that Consolo was breaching the agreement, started unilaterally placing the $5,000 monthly payments into a separate bank account rather than paying them to Menter according to the terms of the agreement. Specifically, Menter received information that led him to believe that Consolo was steering Menter's business customers to other companies and competing directly with Menter, actions which he believed breached their agreement.

{¶6} The trial court found that Consolo had never agreed to a non-compete provision; and that Menter could not substantiate his suspicions to a degree that would justify his failing to make the $5,000 monthly payments to Consolo. By the end of the hearing, Menter agreed to turn over to Consolo all of the $5,000 monthly payments that had been set aside.

{¶7} Consolo considered Menter to be in breach of the terms of their agreement when Menter stopped making the monthly payments. Consolo therefore filed the consent judgment entry which had been previously executed by the parties as part of the settlement in this case. According to the consent judgment, Menter owed Consolo a total of $500,000. According to a document entitled "Mutual Release and Settlement Agreement," $270,000 was the figure the parties agreed that Consolo would accept if payments were made according to the terms set therein.

{¶8} On April 16, 2010, the trial court issued a judgment entry in which it granted Menter's motion to enforce the settlement agreement, found the consent judgment to be void and unenforceable, vacated the consent journal entry that had been

filed by Consolo on December 9, 2009, and overruled Menter's Civ.R. 60(B) motion as moot.

{¶9} Consolo filed a notice of appeal on May 13, 2010. On appeal, Consolo raises two assignments of error. We consolidate those assignments of error to facilitate review.

II.

### ASSIGNMENT OF ERROR I

"APPELLEE MENTER'S ESCROWING OF PAYMENTS OWED TO APPELLANT CONSOLO WAS NOT MERELY 'NONCOMPLIANT' BUT ROSE TO THE LEVEL OF A BREACH OF THE SETTLEMENT AGREEMENT[.]"

### ASSIGNMENT OF ERROR II

"THE TOTAL OF $500,000.00 OWED BY APPELLEES UPON THEIR BREACH OF THE AGREEMENT ARE NOT LIQUIDATED DAMAGES OR A PENALTY BUT THE AMOUNT OF THE SETTLEMENT AGREEMENT THAT BECAME DUE AND OWING UPON APPELLEE'S BREACH[.]"

{¶10} In his first assignment of error, Consolo argues that the trial court erred in finding that Menter's decision to stop making the monthly payments did not rise to the level of a breach of the contract. In his second assignment of error, Consolo argues that the trial court erred in concluding that the total amount of the signed agreement was $270,000 and that the $500,000 consent judgment was void and unenforceable. As the two issues are closely related, we address them together.

### Breach of the Settlement Agreement

{¶11} A settlement agreement is a binding contract between parties which requires a meeting of the minds as well as an offer and acceptance. *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 376. A settlement agreement is subject to enforcement under standard contract law. Id. "Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." (emphasis omitted.) *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 144, citing *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 108. A plaintiff must prove the elements of a breach of contract by a preponderance of the evidence. *Cooper & Pachell v. Haslage* (2001), 142 Ohio App.3d 704, 707.

{¶12} Consolo argues on appeal that Menter's decision to set aside the funds for the monthly payments constituted a clear breach of the contract. Menter counters that the evidence submitted and accepted by the trial court firmly established that Consolo failed to meet his burden to prove by a preponderance of the evidence the second and third elements of a breach of contract. Menter further contends that if there was a breach of the settlement agreement, it was not material.

{¶13} A review of the hearing transcript reveals that issues arose surrounding compliance with the signed agreement when Menter grew suspicious that Consolo was steering his former clients to a competing credit card processing company. In light of these suspicions, Menter began placing the monthly payments in a separate bank account

in lieu of tendering payment to Consolo. During the hearing, the trial judge repeatedly asked Menter to identify language in the agreement that prohibited Consolo from soliciting former clients. While Menter could not identify any specific language, he argued that such an understanding was implicit in the agreement. There was competing testimony at the hearing as to whether Consolo had, in fact, been involved in his former clients' decision to leave Menter. The trial court made a specific finding in its judgment entry that the settlement agreement did not contain a non-compete provision. The trial court also concluded that Menter could not substantiate his suspicions that Consolo had breached the agreement. At the conclusion of the hearing, Menter agreed to "release" the money that had been set aside as "a show of good faith." Consolo consented to the release of the money but insisted that Menter now owed the $500,000 agreed upon as reflected in the consent judgment.

{¶14} In its judgment entry, the trial court concluded that while Menter was noncompliant with the settlement agreement, his conduct did not rise to the level of a breach. Specifically, the trial court stated:

> "First, the Court finds that the Defendants did not breach the terms of the settlement agreement when they escrowed the $5000 monthly payments until they could look into their suspicions about the Plaintiff. The Defendants' failure to make the payments was noncompliant with the terms of the settlement agreement. But, given the totality of the circumstances – including the Defendants' escrowing and then returning the funds – the Court finds the noncompliance does not reach the level of breach that would excuse the Plaintiff from further performance of his duties under the settlement agreement.
>
> "The Defendants are, however, liable for paying interest to the Plaintiff, at the statutory rate, for the period of time that money owed to the Plaintiff was escrowed and withheld from him."

{¶15} A review of the record reveals that Menter's conduct did constitute a breach of the payment terms set forth in the Release. The fact that Menter subsequently offered to release the payments which had been placed in a separate account does not alter the reality that he had previously ceased to meet his obligations under the terms of the agreement. Under Ohio law, it is generally presumed that "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Medical Life Ins. Co.* (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. "If the language of [a written agreement] is clear and unambiguous, this Court must enforce the instrument as written." *Hite v. Leonard Ins. Servs. Agency, Inc.* (Aug. 23, 2000), 9th Dist. No. 19838.

{¶16} Here, as set forth in the Release, after making two initial payments totaling $50,000, Menter was required to tender monthly payments to Consolo. When asked if Menter stopped making monthly payments due to his suspicion that Consolo was steering clients to competitors, counsel for Menter stated, "Correct. But instead we escrowed those payments and we have continued to escrow those [$5,000] payments every month[.]" At the hearing, a letter was submitted into evidence that Menter's counsel had sent to Consolo's counsel when Menter grew suspicious that Consolo was in breach of the agreement. In this letter dated September 28, 2009, Menter's attorney suggested that, in order to preserve the existing settlement, the monthly payments should be placed "into escrow" until the issues surrounding a possible breach by Consolo were resolved. A review of the settlement documents reveals that there was no provision that allowed for the payments to be withheld, or set aside, in the event of a possible dispute. When asked

at the hearing if he thought there was language in the agreement which permitted him to place the monthly payments in escrow, Menter testified, "Not that I can read, no." There was no evidence presented that Consolo consented to the monthly payments being set aside. We also note that a second letter drafted by Menter's attorney, dated October 16, 2009, indicated that the monthly payments would be suspended until the resolution of the dispute. Thus, this case does not involve a scenario where Menter merely missed a number of monthly payments. Instead, Menter made a conscious decision to cease performance in violation of the Release. This course of action was not merely "noncompliant." Given the fact that Consolo was not in breach of any of the terms of the settlement agreement, Menter, by setting aside the monthly payments, failed to fulfill his contractual obligations without legal excuse. Thus, Menter's conduct constituted a breach of the payment provisions delineated in the Release.

{¶17} Menter argues in the alternative that even if refusing to make the monthly payments did constitute a breach of the settlement agreement, the judgment of the trial court should be upheld on the basis that the breach was not material. An appellate court will not consider an argument raised for the first time on appeal. *Gannon v. Klockenga*, 9th Dist. No. 22946, 2006-Ohio-2972, at ¶21. As noted above, the trial court in this case did not conduct an analysis of whether the breach was material. Instead, the trial court concluded that, based on the totality of the circumstances, Menter's "noncompliance" did not constitute a breach of the settlement agreement. At the hearing on this matter, Menter did not argue that his non-performance was not a material breach. Rather, Menter maintained that he was under no obligation to perform because Consolo had violated the

terms of the settlement agreement. While counsel for Menter went so far as to acknowledge during closing argument that he sensed he would not prevail on his breach theory if the matter were tried, Menter did not present an alternative argument in regard to the materiality standard. As Menter did not make this argument before the trial court, we decline to address it for the first time on appeal. *Gannon* at ¶21.

### Amount of the Settlement

{¶18} The parties offer sharply contrasting views as to the total amount of the settlement. Consolo argues that the parties agreed that Menter owed him $500,000 as damages stemming from the allegations raised in the complaint as memorialized in the consent entry. Consolo asserts that Menter was permitted under the terms of the agreement to avoid full payment of the amount by making two initial payments totaling $50,000, and then subsequently making monthly payments of $5,000 per month until Consolo had received an aggregate sum of $270,000. The consent judgment, according to Consolo, reflected the total amount of the settlement and was to be filed only if Menter failed to meet the requirements necessary to avoid payment in full. Menter, on the other hand, argues that the parties settled the case for a total of $270,000 and that the $500,000 consent judgment constituted an unenforceable penalty.

{¶19} Courts generally presume that the intent of the parties can be found in the written terms of their contract. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638. If a contract is unambiguous, the language of the contract controls and "[i]ntentions not expressed in the writing are deemed to have no existence and may not be shown by parole evidence." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989),

46 Ohio St.3d 51, 53. If, however, "a contract is ambiguous, parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties." *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 521. Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *Butler v. Joshi* (May 9, 2001), 9th Dist. No. 00CA0058. "The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law." *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co*. (1989), 65 Ohio App.3d 139, 146.

{¶20} The February 16, 2010 hearing was primarily devoted to consideration of whether Menter had breached the agreement or alternatively whether the parties had agreed to a noncompetition provision. Notwithstanding that primary focus, the actual amount of the settlement also arose as an issue at the hearing. Consolo argued that he determined the case had a value of $500,000 and the parties agreed to settle the case for that amount. Thus, according to Consolo, the Release constituted an agreement to accept a discounted amount on the condition that the payments were tendered as agreed. Menter testified that the counsel for each party had negotiated a settlement amount of $270,000 but when he arrived at the courthouse to sign the agreement, he was informed by his attorney that, "They want to put a penalty on you if you miss a payment that it's going to – you're going to be penalized $500,000[.]" The trial court seemed to indicate that Menter's testimony on this point was not credible.

{¶21} While the amount of the settlement did arise as an issue at the hearing, the vast majority of the testimony at the hearing focused on whether the agreement had been

breached. In concluding that the consent judgment was an unenforceable penalty, the trial court appears to have reached its conclusion based solely on the written terms of the Release. Specifically, the trial court concluded that the parties settled the case for $270,000, stating:

> "[T]he Court finds – applying the tests of *Lake*[][*R*]*idge Academy v. Carney* (1993), 66 Ohio St.3d 376 and [*Samson*] *Sales, Inc. v. Honeywell* (1984), 12 Ohio St.3d 27 – that the $230,000 added payment in the [$500,000] Consent Judgment Entry to be an unenforceable penalty, not a legitimate liquidated damages amount. The Court therefore finds the Consent Judgment Entry void and unenforceable, and vacates the December 9, 2009 filing of the Consent [] Entry.
>
> "The Court finds that computing actual damages for failure to make payments on the consent agreement is a simple matter; and that the $230,000 penalty is unconscionable."

{¶22} The trial court relied on the precedent of two Ohio Supreme Court decisions in reaching its conclusion. In *Lake Ridge Academy*, the Supreme Court held that the freedom to contract is limited in situations where stipulated damages would constitute a penalty. *Lake Ridge Academy*, 66 Ohio St.3d at 381. In *Samson Sales*, the Supreme Court held that:

> "[w]here the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult[y] of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties; and if (3) the contract is consistent with the conclusion that it was the intension of the parties that damages in the amount stated should follow the breach thereof." *Samson Sales,* 12 Ohio St.3d at 28, quoting *Jones v. Stevens* (1925), 112 Ohio St. 43, paragraph two of the syllabus.

{¶23} We hold that the trial court erred as a matter of law in concluding that the $500,000 consent judgment constituted an unenforceable penalty. A careful review of the documents reveals that one could reasonably reach multiple conclusions with respect to the amount of the settlement. Under the portion of the Release subtitled, "Release and Covenants by Consolo," the agreement states, in a pertinent part:

> "1.6 Counsel for Consolo shall hold in escrow the Consent Judgment Entry, a copy of which is attached hereto and incorporated herein as Exhibit 3, and the Promissory Note, a copy of which is attached hereto and incorporated herein as Exhibit 4, in accordance with the terms and conditions contained herein. Consolo's counsel may disburse said Promissory Note to Consolo and may file said Consent Judgment with the Summit County Clerk of Courts, if and only if, Menter, EMS I and EMS II default in payments as required by paragraph 2.2 herein."

{¶24} The following paragraph, designated as Paragraph 1.7, states that counsel for Consolo would be required to return the original consent judgment to Menter when Menter had made all of the monthly payments. While Paragraph 1.6 indicated that Consolo could file the consent judgment if Menter defaulted on the monthly payments, there is no language indicating that the amount of the consent judgment represented the settlement amount.

{¶25} Under the portion of the agreement that outlines the release and covenants by Menter, the agreement contains the following language:

> "2.2 Menter, EMS I and EMS II shall pay the total sum of two hundred and seventy thousand dollars ($270,000) by making the following payments to Consolo upon the following conditions:
>
> "(a) Twenty Thousand Dollars ($20,000) upon delivery to Menter's counsel of an executed original of this Mutual Release and Settlement Agreement, Voluntary Dismissal with Prejudice (Exhibit 1) and Agreed Order of Dismissal (Exhibit 2); and

"(b)    Thirty Thousand Dollars ($30,000) within thirty (30) days after the event delineated in subparagraph 2.2(a) has occurred; and

"(c)    Beginning thirty (30) days after the event delineated in subparagraph 2.2(b) has occurred, and continuing on the same day of each month thereafter, the sum of Five Thousand Dollars ($5,000) a month, until the total sum of Two Hundred and Seventy Thousand Dollars ($270,000) as required by this paragraph 2.2 has been paid to Consolo;

"***

"(h)    The obligation to make aggregate payments of two hundred and seventy thousand dollars ($270,000) to Consolo may be pre-paid at any time without penalty.

"2.3    As security for the payments required by paragraph 2.2 above, Menter, EMS I and EMS II shall tender to Consolo's counsel a Promissory Note in the amount of $500,000.00, a copy of which is attached hereto as Exhibit 4.  The original of this Promissory Note shall be held in escrow by Consolo's counsel and only distributed to Consolo in the event of a default in a payment required by paragraph 2.2 herein which is not timely cured.  If all of the payments required by paragraph 2.2 herein are made, then Consolo's counsel shall return the original executed Promissory Note (Exhibit 4) to Menter, along with the original executed Acknowledgment of Payment in Full of Promissory Note (Exhibit 6).  In the event of an uncured default in a payment required by paragraph 2.2 herein, then the original executed Promissory Note may be distributed by Consolo's counsel to Consolo; however, the balance due on said Promissory Note shall be reduced by the total amount of any payments made under paragraph 2.2 herein.

"2.4    As further security for the payments required by paragraph 2.2 herein, Menter, EMS I and EMS II shall tender to Consolo's counsel a Consent Judgment Entry in the amount of $500,000.00, a copy of which is attached hereto as Exhibit 3.  The original executed Consent Judgment Entry shall be held in escrow by Consolo's counsel and only filed with the Summit County Common Pleas Clerk of Courts in the event of a default in a payment required by paragraph 2.2 herein which is not timely cured.  If all of the payments required by paragraph 2.2 are made, then Consolo's counsel shall return the original executed Consent Judgment Entry to Menter, along with the original executed Satisfaction of Judgment (Exhibit 5).  In the event of an uncured default in a payment required by paragraph 2.2 herein, then Consolo's counsel may file the original Consent Judgment Entry with the Summit County Common Pleas Court Clerk of Courts;

however, the balance due on said judgment shall be reduced by the total amount of any payments made under paragraph 2.2 herein.

"2.5 It is acknowledged and agreed by the parties hereto that the Promissory Note (Exhibit 4) and the Consent Judgment Entry (Exhibit 3) represent the same contingent obligation by Menter, EMS I and EMS II to Consolo; and in the event of an uncured default in a payment required by paragraph 2.2 herein, the maximum amount that Menter, EMS I and EMS II could be jointly liable to Consolo for is the sum of $500,000, less the total of any payments made to Consolo under paragraph 2.2 herein."

{¶26} Paragraphs 2.3 and 2.4 reference the $500,000 amount in reference to both the consent decree and the promissory note. This fact could be construed as evidence that the $500,000 figure represented the parties' evaluation as to the value of the settlement, and their decision to provide security as such, much in the nature of a cognovit note. Conversely the "promissory installment note" that is actually attached as Exhibit 4 to the Release is for the amount of $270,000, and not the amount of $500,000 as referenced in Paragraph 2.3 of the Release.

{¶27} The amount of the settlement in this case was not expressed in clear and unambiguous terms. The parties' agreement does not contain a provision which explicitly identifies the amount of the settlement. It is clear that the consent judgment that could be filed upon Menter's nonpayment is for the amount of $500,000. It is also clear, however, that Menter could have satisfied his obligation to Consolo by making scheduled payments totaling an aggregate sum of $270,000. Unfortunately, the significance of the $270,000 settlement figure and the $500,000 figure in the consent judgment is unclear. Further complicating the issue is the fact that the amount of the promissory note as referenced in Paragraph 2.3 and the actual amount of the promissory

note are inconsistent. Thus, unlike the circumstances this Court confronted in *Quality Mold, Inc. v. Committee to Elect Williams*, 9th Dist. No. 23749, 2008-Ohio-2821, it is not clear that the plaintiff settled the case for a certain amount but was willing to accept less if certain conditions were met. Upon review of the records before us, this Court concludes that the amount of the parties' settlement is reasonably susceptible to more than one interpretation. As the settlement is ambiguous with respect to the amount of the settlement, the trial court erred as a matter of law in finding that the $500,000 consent entry was an unenforceable penalty.

{¶28} To the extent that the trial court concluded that Menter did not breach the terms of the settlement agreement, Consolo's first assignment of error is sustained. To the extent that the trial court found as a matter of law that the consent judgment constituted an unenforceable penalty, it committed legal error and the second assignment of error is sustained. In light of Menter's breach, we remand for further proceedings in regard to the amount of the parties' settlement. See *Saari v. Saari*, 9th Dist. No. 08CA009507, 2009-Ohio-4940.

### III.

{¶29} Consolo's first and second assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed and remanded for further proceedings consistent with this decision.

Judgment reversed.
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

 

 

EVE V. BELFANCE  
FOR THE COURT

 

BELFANCE, P. J.  
MOORE, J.  
CONCUR

CARR, J.  
CONCURS IN PART, AND DISSENTS IN PART, SAYING:

{¶30} I concur in the majority opinion with respect to the first assignment of error. I respectfully dissent in regard to the majority's conclusion that the trial court erred in determining that the $500,000 consent judgment was an unenforceable penalty.

{¶31} Consolo argues on appeal that it is clear from the language of the agreement that the parties settled this case for $500,000. Consolo specifically argues that "Section I of the Settlement Agreement resolved the pending lawsuit." In making reference to "Section I of the

Settlement Agreement," Consolo is referring to Section I of the Mutual Release and Settlement Agreement. Consolo's argument is premised on the fact that the parties agreed that a $500,000 consent judgment in favor of Consolo could be filed if Menter failed to meet his monthly obligations. Consolo emphasizes that the provision in the Mutual Release and Settlement Agreement which first identifies the $500,000 consent judgment appears prior to any discussion of a reduced payment arrangement. There is, however, no language in the Mutual Release and Settlement Agreement which explicitly states that the parties agreed that Consolo should receive $500,000 as damages stemming from the allegations raised in the complaint. Rather, the language in Paragraph 2.2 clearly indicates that Menter was required under the agreement to pay Consolo an aggregate sum of $270,000. Furthermore, there is no provision indicating that the sum of $270,000 is less than the total amount of the settlement. Paragraph 1.6 states that Consolo could file the signed consent judgment, which was attached and incorporated into the Mutual Release and Settlement Agreement, should Menter default under his obligations under Paragraph 2.2. Other than noting that the consent judgment is attached as an exhibit, Paragraph 1.6 does not even identify the amount of the consent judgment. While Paragraph 2.4 and Paragraph 2.5 indicate that Menter could be liable for $500,000 should he default on the monthly payments, there is no language indicating that the $500,000 figure represented the total amount of the settlement, as opposed to a penalty provision to encourage performance. As I believe the Mutual Release and Settlement Agreement makes it clear that the parties resolved the dispute for $270,000, I would affirm the trial court's determination that the $500,000 consent judgment was an unenforceable penalty.

APPEARANCES:

WILLIAM T. WHITAKER and ANDREA L. WHITAKER, Attorneys at Law, for Appellant.

JEFFREY T. WITSCHEY, and ALEX J. RAGON, Attorneys at Law, for Appellee.