[Cite as *Prime Properties Ltd. Partnership v. Badah Ents.*, 2014-Ohio-206.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99827**

# PRIME PROPERTIES LTD. PARTNERSHIP

PLAINTIFF-APPELLANT

vs.

# BADAH ENTERPRISES, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cleveland Municipal Court
Case No. 2012 CVH 015178

**BEFORE:** S. Gallagher, J., Jones, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 23, 2014

**ATTORNEYS FOR APPELLANT**

Thomas L. Brunn, Jr.
Alison D. Ramsey
The Brunn Law Firm Co., L.P.A.
208 Hoyt Block Building
700 West St. Clair Avenue
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEES**

Robert T. Glickman
Charles A. Nemer
Christina E. Niro
McCarthy, Lebit, Crystal & Liffman Co., L.P.A.
101 W. Prospect Avenue
Suite 1800
Cleveland, OH   44115

SEAN C. GALLAGHER, J.:

{¶1} Plaintiff Prime Properties Limited Partnership ("Prime Properties") appeals the trial court's decision granting summary judgment in favor of defendants Badah Enterprises, Inc., Essam Abdallah, and Ennan Abdallah (collectively "Badah") upon their counterclaim for breach of contract, which was predicated on an alleged settlement agreement entered in a previous action. For the following reasons, we reverse the decision of the trial court and remand for further proceedings consistent herewith.

{¶2} In 2007, Prime Properties leased commercial property to Badah for the operation of a fuel station. In 2010, a petroleum leak occurred on the property, resulting in the shutdown of the fuel station. A dispute arose between Badah and Prime Properties regarding the maintenance and repair of the fuel storage tanks, lines, and dispensing systems. Prime Properties filed a complaint for forcible entry and detainer in May 2010 in Cleveland Municipal Court's Housing Division, later amended to include claims relating to the leaked petroleum. Badah filed a counterclaim in that action, seeking lost profits based on Prime Properties' alleged failure to maintain the premises. There was another action pending in Rocky River Municipal Court involving claims between the parties, although the scope of those claims is not clear from the record in this appeal.

{¶3} During the course of those 2010 cases, the parties engaged in protracted settlement negotiations at the deposition of Prime Properties' representative in July 2011. Prime Properties' Civ.R. 30(B)(5) deponent, Elias Kassouf, was allowed to participate in the settlement negotiations, but the ultimate settlement authority for Prime Properties

rested with James Kassouf. The parties' lawyers tentatively agreed to a global settlement in which Badah would pay Prime Properties a total sum of $75,000, with $35,000 to be deposited no later than August 5, 2011, and the remainder to be paid monthly thereafter. Any breach subjected Badah to a consent judgment of $90,000, less any payments. The parties further agreed to mutual dismissals of all claims, and Badah argues the parties agreed to general mutual releases of all future claims.

{¶4} The next day, the parties began memorializing a global settlement agreement based on the oral discussions. After a few versions of the settlement agreement were exchanged, Prime Properties submitted a version that included a carve-out exception to a general release, for environmental issues. Leading to the carve-out exception, Prime Properties' attorney forwarded a copy of the proposed agreement to James Kassouf, who, in turn, forwarded the copy to another Prime Properties' lawyer who was handling the environmental impact of the petroleum leak. It was Prime Properties' specialist who recommended the inclusion of the carve-out exception in any settlement. Badah balked at the environmental carve-out of the general release, and the settlement agreement was never consummated.

{¶5} During this time, the parties filed an agreed judgment entry with the Rocky River Municipal Court seeking a continuance of the then-impending trial in which the parties agreed that a "settlement has been reached and that the parties are currently negotiating the terms and language of a settlement agreement." That trial court ordered the trial continued in "order to allow the parties to come to an agreement on settlement

terms, reduce the terms to writing, and execute a settlement agreement." Both parties signed the agreed judgment entry, dated August 12, 2011.

{¶6} The respective courts apparently dismissed the 2010 cases without prejudice when the settlement discussions faltered. According to the record on appeal, Badah did not seek to enforce any alleged oral settlement agreement at the time of those dismissals. Instead, on September 12, 2012, Prime Properties refiled its claims against Badah in Cleveland Municipal Court, Housing Division, case No. 2012 CVH 015178. Badah answered the complaint but did not raise any claim regarding the alleged settlement. It was not until Badah sought leave to file an amended counterclaim that it advanced a breach of contract action against Prime Properties, claiming Prime Properties breached the terms of a settlement agreement by filing the 2012 action. Badah sought specific performance of the terms of the purported settlement agreement and filed a motion to enforce a settlement agreement that the trial court converted to one for summary judgment. Prime Properties claimed that no binding settlement agreement was ever consummated. The trial court granted summary judgment in favor of Badah upon its counterclaim, and entered an order enforcing the oral settlement agreement allegedly entered at the July 2010 settlement discussion.

{¶7} It is from this decision that Prime Properties timely appeals, advancing two assignments of error, the second of which is dispositive of this appeal.[1] In its second

[1]Prime Properties' first assignment of error provides that "[t]he trial court erred as a matter of law by granting summary judgment as to the existence and enforceability of a settlement agreement without first holding an evidentiary hearing." In light of the fact that we find that the trial court

assignment of error, Prime Properties claims, "The trial court erred as a matter of law in determining that the parties entered into an enforceable settlement agreement."  For the following reasons, we sustain Prime Properties' argument.

{¶8} A settlement agreement, at its lowest level, is an issue of contract law, requiring a meeting of the minds as well as an offer and acceptance in order to create a binding contract.  *Natl. Court Reporters, Inc. v. Krohn & Moss, Ltd.*, 8th Dist. Cuyahoga No. 95075, 2011-Ohio-731, ¶ 10.   While it "is preferable that a settlement be memorialized in writing[,] * * * an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract.  Terms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.'"  (Citations omitted.) *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3, 2002-Ohio-2985, 770 N.E.2d 58, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85, 75 N.E.2d 608 (12th Dist.1947), paragraph one of the syllabus.   In order for the oral settlement agreement to form a binding contract, there must be a meeting of the minds of the parties, and an offer on one side and an acceptance on the other.  *Gutbrod v. Schuler*, 8th Dist. Cuyahoga No. 94228, 2010-Ohio-3731, ¶ 17.  Generally, whether a meeting of the minds has been obtained is a question of fact to be determined by the trier of fact from all the relevant facts and circumstances.  *Id.*, citing *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 325, 663 N.E.2d 1316 (2d Dist.1995).

erred in granting summary judgment in favor of Badah, the first assignment of error is moot.

**{¶9}** There are two avenues to enforce a purportedly binding oral settlement agreement. *Natl. Court Reporters, Inc.* at ¶ 12. "The settlement agreement may be enforced either through filing an independent action for breach of contract, or by filing a motion to enforce the settlement agreement *in the same action* pursuant to Civ.R. 15(E)." (Emphasis added.) *Id.* In this case, Badah proceeded with the former enforcement mechanism, in light of the fact that the original case had been dismissed without prejudice over a year prior to Badah's counterclaim for breach of contract. Therefore, and as recognized by the trial court in this case, Badah's motion to enforce a settlement agreement was really one for summary judgment upon its counterclaim for breach of contract or, more specifically, breach of the alleged settlement agreement.

**{¶10}** We must clarify one over-arching issue. Essentially, the parties treated Badah's breach of contract claim as if it were a motion to enforce a settlement agreement filed in the case terminated by the agreement, rather than addressing the merits of Badah's new, independent breach of contract claim. These are two different mechanisms not to be conflated. *See Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997) (where the existence or meaning of a settlement agreement is an issue for resolution of a motion to enforce a settlement agreement filed in the case for which the settlement agreement applies, a hearing is required); *Consolo v. Menter*, 9th Dist. Summit No. 25394, 2011-Ohio-6241, ¶ 11 (a stand-alone claim for breach of a settlement agreement is enforced under the same standard as a breach of contract claim). The resulting confusion

of whether to address this as a motion to enforce a settlement or as a breach of contract action muddied the process for all parties in the trial court.

{¶11} Prime Properties argues that a hearing was necessary to resolve the "formation of the agreement" issue, while Badah argues that it established the existence of a valid oral contract by demonstrating no genuine issues of material fact existed regarding the enforceability of that settlement agreement. Unfortunately, these arguments both miss the point. The confusing and complicated nature of these settlement negotiations contributed to this apparent blurred distinction between the enforcement of an oral settlement agreement and a breach of contract action.

{¶12} Thus, the issues presented to the trial court were miscast. This is not a case where the parties may conduct a hearing to resolve this formation dispute for two important reasons. First, both parties requested a jury in their respective pleadings to resolve all claims. In light of that, the parties' reliance on *Rulli* or any expedited hearing procedure to resolve the breach of contract counterclaim is simply misplaced.[2]

---

[2]In *Rulli*, the plaintiff and defendant reached an agreement to settle the case and proceeded to place that agreement on the record pending a final agreed judgment entry. *Rulli v. Fan Co.*, 7th Dist. Mahoning No. 94 C.A. 14, 1995 Ohio App. LEXIS 5622 (Dec. 20, 1995) *3. The *Rulli* parties then disagreed about the terms of the settlement, and one side filed a motion to enforce. *Id.* In that context, the Ohio Supreme Court determined that a hearing was necessary when there was an issue regarding the formation of the settlement agreement, which resolved the claims in the same action as the motion to enforce the settlement agreement was filed. *Rulli*, 79 Ohio St.3d 374, 377, 683 N.E.2d 337. On the contrary, the *Consolo* case is illustrative of the procedure courts employ when the party seeking to enforce a settlement agreement files a separate action, including, as here, a counterclaim, claiming another party breached an oral, but binding, settlement agreement. *Consolo*, 9th Dist. Summit No. 25394, 2011-Ohio-6241.

{¶13} Second, and more importantly, in situations where the party seeking enforcement of a settlement agreement files a separate breach of contract action, the inquiry goes beyond determining the formation of a binding agreement. In order to substantiate a breach of contract claim, a party must establish four elements: (1) a binding contract or agreement was formed; "[(2)] the nonbreaching party performed its contractual obligations; [(3)] the other party failed to fulfill its contractual obligations without legal excuse; and [(4)] the nonbreaching party suffered damages as a result of the breach." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996), citing *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995). The mere fact that a binding settlement agreement exists is insufficient to warrant a breach of contract award, even when the damages sought is specific performance. In other words, there must be a breaching act that triggered the filing of a separate breach of contract action even where the contract is a settlement agreement. *See Consolo*, 9th Dist. Summit No. 25394, 2011-Ohio-6241.

{¶14} In short, the crux of this appeal lies in the trial court's granting summary judgment upon Badah's breach of contract claim. Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. "Summary judgment may be granted only when (1) there is no genuine issue of material fact, (2) the moving party is

---

When the party seeking to enforce a settlement agreement files a separate breach of contract claim, that party must establish all the elements of a breach of contract action, otherwise no action lies. *Id.*

entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party." *Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 7. A party requesting summary judgment bears the initial burden to show the basis of the motion. *Dresher v. Burt*, 75 Ohio St.3d 280, 293-294, 662 N.E.2d 264 (1996). Only when the moving party satisfies this burden of production is the opposing party's reciprocal burden triggered, requiring introduction of evidence allowed under Civ.R. 56(C) to demonstrate genuine issues of material fact. *Id.*

{¶15} In this case, Badah advanced a breach of contract action premised on Prime Properties refiling its claims despite an alleged settlement contract. Badah, however, focused on the formation element of an independent breach of contract claim, to the exclusion of establishing a breach and the non-breaching party's performance under the purported contract. Badah bore the burden of establishing that there were no genuine issues of material fact regarding its breach of contract claim, elements of which are formation and Badah's performance pursuant to the contractual terms. *Textron Fin. Corp.*, 115 Ohio App.3d 137, 144. If Badah performed, or attempted to perform, under the terms of the purported oral agreement, we have no evidence of this in the record before us to support the conclusion that a breach of contract existed.

{¶16} Nevertheless, even if we considered the issues as framed by the parties, after reviewing the entire record, there are genuine issues of material fact regarding Badah's

belief that a binding contract was consummated in July 2010, and summary judgment upon all claims was therefore improper for three important reasons.

{¶17} First, the only evidence in support of summary judgment, regarding the formation element of Badah's breach of contract claim, offered for the trial court's review was an affidavit from Badah's lawyer, who attempted to negotiate a settlement in the 2010 cases. As explained in his affidavit, Badah's lawyer attempted to reach a global settlement of all the 2010 claims, and at a deposition agreed to all the material terms of the settlement with Prime Properties' attorney and the Civ.R. 30(B)(5) deponent.

{¶18} Generally, however, courts cannot presume an agent's or a lawyer's authority to bind a principal to an oral contract unless there is evidence that the principal extended or cloaked the lawyer with authority to settle.[3] *Schalmo Builders, Inc. v. Zama*, 8th Dist. Cuyahoga No. 90782, 2008-Ohio-5879, ¶ 17-18. "Absent specific authorization, an attorney has no implied or apparent authority to compromise and settle his client's claims." *Id.*, quoting *Garrison*, 105 Ohio App.3d 322, 326, 663 N.E.2d 1316. A party's retention of an attorney, in and of itself, is not authorization for the attorney to settle the matter. *Id.* Whether a party authorized the attorney to settle a case is a question of fact, which shall not be disturbed on appeal if supported by some competent, credible evidence. *Id.* More important,

> under an apparent-authority analysis, it is the client's acts that must create the apparent authority, not the acts of the attorney. The Ohio Supreme Court has stated the following: "Under an apparent-authority analysis, an agent's authority is determined by the acts of the principal rather than by the acts of the agent. The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority."

---

[3] The final judgment entry reflects that the trial court determined that James Kassouf had the final settlement authority for Prime Properties, and Badah did not contest the trial court's determination on that point.

*Id.*, quoting *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, 886 N.E.2d 827. Badah's evidentiary submission is silent as to whether James Kassouf cloaked his agents, Prime Properties' attorney and deponent Elias Kassouf, with apparent settlement authority.

**{¶19}** For the purposes of this case, it is irrelevant that Badah's affidavit claimed the lawyer for Prime Properties indicated Elias Kassouf had authority to bind Prime Properties. The only party with that ability, according to the uncontested evidence, was James Kassouf on behalf of Prime Properties. The trial court acknowledged that James Kassouf had sole authority to settle on behalf of Prime Properties, but dismissed that authority with the statement that Prime Properties' "counsel and representative did not contact James Kassouf frequently enough." Despite this finding by the trial court, Badah's evidentiary submissions were silent on the issue, only indicating that it was the statements of Prime Properties's lawyer that established the apparent authority to settle. This disregards the premise of apparent-authority law in Ohio. It is the acts of the principal and not the agent that create apparent authority to act.

**{¶20}** Second, there are genuine issues of material fact regarding the contract formation when all the evidentiary submissions are considered. The parties signed and filed an agreed judgment entry in the Rocky River Municipal Court on August 12, 2011, after the settlement discussions faltered. In that entry, the parties agreed that although a settlement had been reached, the parties were currently negotiating the terms and language in order to execute that settlement agreement. The trial in that particular 2010

case was expressly continued in order for the parties to agree to settlement terms, reduce those terms to writing, and execute an agreement. While we question settlement agreements that seem to "kick the can down the road," leaving intricate details unresolved, we understand that the complicated nature of this transaction placed the parties, and the trial court, in the unenviable position of trying to foster and memorialize a settlement agreement when at least some of the conditions were still fluid. This is supported by the fact that the agreed journal entry itself, signed and dated after the July 2011 settlement discussions, raises genuine issues of material fact that a settlement had been reached by continuing the case "for the parties to agree to settlement terms, reduce those terms to writing, and execute an agreement." This suggests, on its face, that there was more to memorialize in their agreement than simply writing down the terms of the July discussions.

{¶21} Finally, the terms of the settlement Badah seeks to enforce required a lump-sum payment in August 2011, and monthly payments thereafter. In reviewing the record, it is apparent that Badah did not seek to enforce an agreement until after Prime Properties exercised its right to refile the claims in the underlying action, and even then, Badah had to amend its answer to include the counterclaim for breach of the contract. Badah's claim that Prime Properties is barred from raising this argument because it lacked evidentiary support is misplaced.

{¶22} We have no evidence on this point to establish whether Badah specifically performed under the purported contract to establish its breach of contract claim. This

omission creates a genuine issue of material fact regarding whether all parties believed an oral settlement agreement had in fact been consummated. As Badah made clear, the terms of an oral contract may be determined from "words, deeds, acts, and silence of the parties." *Kostelnik*, 96 Ohio St.3d 1, 3, 2002-Ohio-2985, 770 N.E.2d 58.

{¶23} Reluctantly, for the foregoing reasons, we must find that the trial court erred in determining that Badah presented sufficient evidence to sustain its burden to demonstrate that no genuine issues of material fact existed upon its counterclaim for breach of contract. Most important to this analysis, Badah failed to demonstrate that all elements of the breach of contract claim were satisfied for the purposes of summary judgment. Further, a review of the evidence produced by Badah established genuine issues of material fact, necessitating resolution by the trier of fact, upon the formation element of their breach of contract counterclaim.

{¶24} The decision of the trial court is reversed, and this cause is remanded for further proceedings consistent herein.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR