FOOTE THEATRE, INC., APPELLEE, *v.* DIXIE ROLLER RINK, INC., APPELLANT.

(No. 6-83-4—Decided March 27, 1984.)

*Messrs. Runser & Hatcher* and *Mr. C. Allan Runser,* for appellee.

*Messrs. Gooding, Evans & Huffman* and *Mr. Lawrence A. Huffman,* for appellant.

GUERNSEY, J. This is an appeal by the defendant, Dixie Roller Rink, Inc., from a money judgment of the Court of Common Pleas of Hardin County in favor of the plaintiff, Foote Theatre, Inc.

On August 1, 1979, the parties entered into a written lease whereby the plaintiff leased to the defendant a theatre building located in Ada, Ohio, for the initial term of five months from May 1, 1979, through September 30, 1979, at the rental of $250 per month followed by a term "for FOUR YEARS thereafter" at the rental of $300 per month. At the same time the plaintiff sold to the defendant considerable personal property owned by it and located in the theatre building, necessary for or convenient to its operation as a movie theatre, including three hundred seats attached to the floor. The lease provided that all trade fixtures which can be removed without costly injury to or undue defacement of the premises could be removed at the expiration of the term of the lease provided rents were current and all damages to the premises promptly repaired.

The theatre business operated by the defendant was not successful and on June 18, 1980, the defendant ceased operation of that business, removed from the building all personal property useable in other businesses leaving therein all personal property pertinent to the building's operation as a theatre, including the theatre seats, provided protection to the plumbing from freezing, and locked the building. The defendant continued to pay rent in accordance with the terms of the lease, although the payments were sporadic, and on November 14, 1980, issued its check in the sum of $600 as payment of rent for September and October 1980.

On or about November 4, 1980, plaintiff listed the property for sale with a real estate broker and, not having a key to the premises, directed that the broker obtain one from the defendant. One Paul McNamara, an agent of the broker, then approached Della Jordan, an agent of defendant, and sought a key from her. She had two sets of keys and gave him one set. He later returned reporting to her that that set would not open any of the outside locks on the building and asked for a key which would work. Mrs. Jordan then turned over to him the only keys which she had left, making no copies for her own use.

On or about May 15, 1982, Mrs. Jordan was contacted by one Roger Allen regarding the premises and obtaining a key to enter same. She contacted the real estate agent who obtained plaintiff's consent to turn the keys over to Allen, which was then done through Mrs. Jordan. A new lease was executed between plaintiff and Allen, Allen entering into possession of the premises, and Allen purchased from defendant all of the personal property in the building together with much of that which the defendant had previously removed therefrom and which Allen could use in his business.

Having received no rent from defendant subsequent to that for the month of October 1980, plaintiff brought suit for the delinquency against defendant and the trial court's judgment thereafter rendered for plaintiff in the amount of $5,700 was for the rent due for the nineteen months from November 1980 through May 1982.

Defendant assigns a single assignment of error of the trial court in failing to find that defendant had been constructively evicted from the premises by the real estate agent's taking the only key the defendant had to the premises in November 1980, and that such constructive eviction terminated the lease and relieved defendant from further liability for rent thereunder.

The theory of both the defendant's defense and its appeal is expressed in its assignment of error. We find this theory discussed in *Liberal Savings & Loan Co.* v. *Frankel Realty Co.* (1940), 137 Ohio St. 489, 498-499 [19 O.O. 170], where Judge Williams said:

"Liberal, however, insists that the course pursued by Frankel amounted to an eviction. Actual eviction involves expulsion or exclusion from the demised premises; constructive eviction, surrender of possession by the tenant on justifiable grounds. The distinction between the two kinds of eviction is accurately and fully explained in 2 Tiffany Landlord and Tenant, 1263, Section 185(d) from which we quote: 'In order that there be an eviction by the landlord, in the legal sense, it is necessary that the tenant no longer retain possession of the premises. In case of an actual dispossession of the tenant, an "actual eviction," no question can arise in this regard, but when there is merely an interference with his possession and enjoyment, it is necessary that the tenant relinquish possession of the premises in order that there be a "constructive eviction," the theory being that the acts of interference by the landlord compel the tenant to leave, and that he is thus in effect

dispossessed, though not forcibly deprived of possession. As has been remarked, "the proposition that there can be retention of demised premises and an eviction are logically and legally contradictory." ' *So long as the tenant remains in possession he cannot successfully maintain that he has been constructively evicted.*" (Emphasis added.)

As an affirmative defense the defendant had the burden of proving that there was constructive eviction by the plaintiff. The record discloses no act of the plaintiff constituting constructive eviction except as might be derived from the act of the real estate agent in picking up from Mrs. Jordan what was asserted by her to be the only key to the premises. Although a real estate agent would have the authority from his principal to do such acts on behalf of his principal in reasonable furtherance of the purpose of his agency, it would not customarily or normally be within such authorized scope for him to so interfere with the possession and enjoyment of his principal's tenant as to dispossess the tenant from the premises. Defendant not only had the burden of proving the defense of constructive eviction but, in claiming that the plaintiff was responsible for the acts of the real estate agent, the defendant was obligated to prove that the scope of his authority included constructive eviction of the tenant. *Brown* v. *Christopher Inn* (1975), 45 Ohio App. 2d 279 [74 O.O.2d 404]. See, also, *Logsdon* v. *ABCO Construction Co.* (1956), 103 Ohio App. 233 [3 O.O.2d 289]. This the defendant has failed to do.

Secondly, had the agent had such authority, it does not appear that the agent exercised such authority to the extent of interfering with the defendant's possession. The record discloses that when the agent first made overtures to Mrs. Jordan for a key to the premises, Mrs. Jordan turned over to him only one set of keys, retaining the other. When the agent then returned it does not appear that he demanded all remaining keys to the premises but that Mrs. Jordan voluntarily turned over to him her remaining key without seeking to retain a copy.

Finally, it appears that the defendant left on the premises, but did not abandon thereon, considerable personal property and, by doing so, remained in possession of the premises until they were taken over by Mr. Allen.

We conclude that the defendant failed to prove the defense of constructive eviction and that the judgment must, therefore, be affirmed.

*Judgment affirmed.*

MILLER, P.J., and COLE, J., concur.