DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Toledo Municipal Court which released escrowed rent to plaintiff-appellee, George Heck, and ordered defendant-appellant, the Whitehurst Company, to pay appellee an additional $670.95. From that judgment, appellant now raises the following assignments of error:
 {¶ 2} "A. The decision of the court was against the manifest weight of the evidence and not supported by any credible evidence going to the essential elements.
 {¶ 3} "B. The court abused its discretion in awarding appellee a judgment for the full amount of monies held, plus additional funds.
 {¶ 4} "C. The order is not final and appealable due to the court's failure to conduct an independent review of the magistrates [sic] decision and failed [sic] to state outcome of the dispute and the remedy provided."
 {¶ 5} On or about August 1, 2001, appellant and Heck entered into a lease agreement for the rental of appellant's apartment unit No. 7 at 6134 Northtowne Court in Toledo, Ohio. Several days after Heck moved in, he completed a move-in inspection sheet and submitted it to appellant as appellant had requested. On that form, Heck noted that "my bedroom smells like cigarette butts! strong!" and "sunroom window frame bent up. window moves stiff." Under the comments section of the form, Heck then stated: "It would be nice to have something done about the nasty cigarette smoke coming into my bedroom, it's stinking my closet and clothes and furniture up, not to mention the safety hazard of second hand smoke." Over the next several months, appellant took various steps to correct the problem, but in Heck's estimation, cigarette smoke from a neighboring apartment continued to infiltrate his apartment.
 {¶ 6} On January 9, 2002, Heck sent appellant a letter regarding the problems with his apartment. Heck stated that he had called Ed Kawa, the president of the Whitehurst Company, numerous times but that Ed had not returned his calls. The letter then reads in pertinent part: "There are two main problems. The biggest problem is that cigarette smoke is entering into my bedroom and my bathroom in extreme volumes. The people below me smoke and it is traveling up into my apartment. I have been complaining about this problem for 4 months. The maintenance guy has come into my apartment and tried some small things, that has [sic] failed to help, actually he last placed a pipe into the ceiling of my closet, which has made the problem worse. It acts as a funnel, funneling cold air and smoke into my room, from the attic causing my heater to constantly run, and I have to open my windows to let the smoke out, (even when its [sic] about zero degrees out.) Not only do all of my clothes and bed sheets smell like cigarettes, but I have been coming down with many upper respiratory infections, including bronchitis. My second problem is that my window leaks in water, and my wall is rotting out, leaving another putrid smell. It leaks so bad sometimes, that it is running down into my neighbors [sic] apartment directly below me. It even soaks the carpet at times." Heck further wrote that appellant had been aware of these problems for four months but had not correctly done anything to remedy them. Finally, Heck wrote that he was giving appellant written notice of the problems and expected them to be corrected within a reasonable time, which Heck identified as 30 days, or he would place his rent in escrow.
 {¶ 7} On February 13, 2002, Heck sent a letter to Meghan Lynn, the property manager, detailing where he believed the cigarette smoke was entering his apartment. On February 15, 2002, Heck filed in the lower court an application and affidavit for tenant rent escrow pursuant to R.C. 5321.07(B)(1). In his affidavit, Heck asserted that his monthly rent was $639, that he gave appellant written notice of the problems to be corrected on January 9, 2002, and that the following conditions remained uncorrected: "extreme cigarette smoke coming into my bed and bathroom. Also a window that is leaking and rotting the wall frame." Along with his application, appellant deposited $639, his rent for the month of March 2002, and requested relief pursuant to R.C. 5321.07.
 {¶ 8} The case was initially submitted to the citizens dispute settlement program, and after some discussions and work by appellant on Heck's apartment, Heck agreed, on April 9, 2002, to release $639 to appellant from escrow. Subsequently, however, the case was set for an escrow hearing as the problems, in Heck's view, remained. The case proceeded to the escrow hearing before a magistrate on August 30, 2002, at which time Heck was in the process of vacating the apartment. Both Heck and Ed Kawa testified at the hearing. On October 21, 2002, the magistrate filed a decision (which she had signed on September 23, 2002), with findings of fact and conclusions of law in which she found that although appellant had made some efforts to remedy the problems, it had not eliminated the problem of cigarette smoke entering Heck's apartment and had not repaired or replaced the damaged frames on the sun porch windows. The magistrate then recommended that appellant be ordered to correct the existing problems within 21 days after entry of judgment and that Heck be given a rent abatement of 50 percent from August 2001 through July 2002, or $3,834. This sum was to be comprised of an award of $3,163.05 from the escrow account and an award to Heck from appellant of $670.95.
 {¶ 9} On the same day that the magistrate filed her decision, the trial court issued a judgment entry adopting the magistrate's decision. Subsequently, however, the trial court granted appellant an extension of time to file objections to the magistrate's decision. Appellant filed its objections on January 6, 2003, challenging the magistrate's findings of fact and conclusions of law. On February 24, 2003, the trial court filed an entry which reads: "The defendant's objection to the Magistrates [sic] decision, findings of fact and conclusions of law, is hereby denied." Thereafter, on April 17, 2003, the trial court filed an entry which reads: "As to Whitehurst Company, entry of 2/24/03. This order has been made final and appealable order today." It is from that judgment that appellant filed its notice of appeal.
 {¶ 10} We must first address the third assignment of error in which appellant asserts that the judgment from which it filed its notice of appeal is not a final appealable order.
 {¶ 11} The order from which appellant filed its notice of appeal, the April 17, 2003, order which referenced the February 24, 2003, order, was not in and of itself a final order and the court's saying that its previous order was "final and appealable" does not make it so. However, the record in this case reveals that the order of February 24, 2003, was never served on the parties by the clerk of the Toledo Municipal Court. Notice of a final judgment entry and of the date it is entered on the journal must be served upon the parties pursuant to Civ.R. 58(B). If it is not, the time for filing a notice of appeal never begins to run and the parties can file an appeal at any time in the future.Atkinson v. Grumman Ohio Corp. (1988), 37 Ohio St.3d 80. Accordingly, we must determine if the order of February 24, 2003, is a final appealable order.
 {¶ 12} When a magistrate makes a decision, it is to be filed and served on the parties pursuant to Civ.R. 53(E)(1). Then, pursuant to Civ.R. 53(E)(4) (a-c), following the filing of a magistrate's decision, the judge must take one of several courses of action, including: "The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered." Civ.R. 53(E)(4)(c).
 {¶ 13} In the current case, the magistrate filed her decision on October 21, 2001. On that same day, the trial court filed a judgment entry adopting the magistrate's decision. That entry reads in pertinent part:
 {¶ 14} "IT IS HEREBY ORDERED that Landlord Whitehurst Co. seal the area around remaining light switches, around the plywood paneling and around the flue in the master bedroom closet, around the light fixtures, and between the carpet and the wall within 21 days of the entry of this judgment.
 {¶ 15} "IT IS FURTHER ORDERED that Tenant Heck be granted rent abatement of $3,834.00 and that after deducting statutory costs the Clerk release the balance of funds in escrow to Tenant George Heck.
 {¶ 16} "IT IS FURTHER ORDERED that Landlord Whitehurst Co. pay Tenant Heck $670.95 as the difference between the funds released from escrow to Tenant and the amount of rent abatement awarded herein."
 {¶ 17} Appellant, however, filed timely objections to the magistrate's decision which, per Civ.R. 53(E)(4)(c), stayed execution of the October 21, 2001, judgment until the court disposed of the objections and vacated, modified or adhered to its previous order. Then, on February 24, 2003, the court issued its decision denying appellant's objections to the magistrate's decision. The court in that order, however, did not specify that it was adhering to its previous order. This raises the issue of whether a court must expressly state that it is adhering to its previous order when ruling on objections to a magistrate's report under Civ.R. 53(E)(4)(c). We find that it does not. Nothing in the rule specifies that the court must expressly state that it is adhering to its previous order. King v. King (Mar. 8, 2002), 4th Dist. No. 01CA719. Rather, when the court neither vacates nor modifies its previous order, and it denies the objections, it can be inferred that the court is adhering to its previous order. Id. Accordingly, the trial court's judgment entry of February 24, 2003, incorporated its judgment entry of October 21, 2002, by implication and adhered to that judgment.
 {¶ 18} A final issue remains under this assignment of error. That is, whether the trial court's judgment of October 21, 2002, as incorporated in the February 24, 2003 judgment entry, is a final appealable order. In Sabrina J. v. Robbin C. (Jan. 26, 2001), 6th Dist. No. L-00-1374, this court held:
 {¶ 19} "[A]n order of a trial court which merely adopts a magistrate's decision and enters it as the judgment of the court is not a final appealable order. * * * [T]o be final, an entry of judgment by the trial court pursuant to Civ.R. 53(E)(4) must:
 {¶ 20} "1. pursuant to subsection (b), `adopt, reject or modify' the magistrate's decision and should state, for identification purposes, the date the magistrate's decision was signed by the magistrate.
 {¶ 21} "2. state the outcome (for example, `defendant's motion for change of custody is denied') and contain an order which states the relief granted so that the parties are able to determine their rights and obligations by referring solely to the judgment entry, and,
 {¶ 22} "3. be a document separate from the magistrate's decision."
 {¶ 23} In the present case, we find that the trial court's judgment entry of October 21, 2002, as incorporated into its entry of February 24, 2003, is a final appealable order. It adopts the magistrate's decision which, the court indicates was signed on September 23, 2002; it states the outcome by granting Heck a rent abatement; and it specifies those repairs which appellant must make to the apartment and the date by which the repairs must be completed. In short, from that judgment, the parties are able to determine their rights and obligations by referring solely to the judgment entry. Finally, the judgment entry is a document separate from the magistrate's decision. Accordingly, the third assignment of error is not well-taken.
 {¶ 24} In its first assignment of error, appellant contends that the trial court's factual findings and judgment were against the manifest weight of the evidence.
 {¶ 25} The Supreme Court of Ohio has explained: "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks [Law Dictionary (6 Ed. 1990)] 1594. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"`thirteenth juror'"' and disagrees with the factfinder's resolution of the conflicting testimony." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, citing Tibbs v.Florida (1982), 457 U.S. 31, 42. "` The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. "When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Brown v. August (Jan. 9, 2002), 9th Dist. No. 01CA0024. Finally, the rule of law set forth in Thompkins,
supra, applies equally to a matter tried to the bench. State v.Fisher, 6th Dist. No. L-02-1041, 2002-Ohio-7305, at ¶ 7.
 {¶ 26} Appellant asserts that Heck failed to produce any evidence that appellant violated its obligations under R.C.5321.04. R.C. 5321.04 sets forth the obligations of a landlord and reads in relevant part: "(A) A landlord who is a party to a rental agreement shall do all of the following: * * * (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition[.]"
 {¶ 27} At the hearing below, Heck testified that severe cigarette smoke had entered his bedroom and bathroom from the day he first moved into the apartment. He also testified that he first noticed that the window leaked the first time it rained after moving in. Regarding the cigarette smoke, Heck testified that during the first four months that he lived in the apartment, appellant's maintenance man tried many minor things to fix the problem such has sealing and caulking around pipes and vents, to no avail. Heck then tried to block vents into his apartment with towels and dryer sheets but that did not remedy the problem. Heck further testified that Meghan Lynn, the property manager, told him she had the same problem in her apartment. Heck stated that the problem was so bad that he had to have his clothes professionally dry cleaned, had to leave his windows open in the middle of winter and had to sleep in the living room. When he realized that appellant was not fixing the problem, Heck put his rent in escrow. Heck testified that after he placed his rent in escrow, he agreed to release one month's rent to appellant with the agreement that appellant would get an inspector to look at the apartment. Afterward, however, appellant never had an inspector evaluate the problem.
 {¶ 28} On cross-examination, Heck admitted that in April or May 2002, he thought the problem was 80 percent resolved during a one week period. However, he further testified that when the neighbor was out of town, the problem was greatly improved. Heck further admitted that toward the end of August 2001, Meghan Lynn offered him another apartment unit at Northtowne Villas. On redirect, however, Heck testified that although Lynn offered him another unit, she told him she was at that time evicting the smoker and that Heck would be wasting a lot of energy by moving since the smoker would be out by the end of the month. Heck also testified that upon his expressing concern about a new tenant, Lynn promised him she would not rent the apartment to a smoker. When, however, the new tenant, also a smoker, moved in the smoke problem returned.
 {¶ 29} Ed Kawa, the president of the Whitehurst Company, also testified at the hearing below. Kawa stated that the apartment units at Northtowne Villas have their own furnaces, air-conditioning units, and ductwork and, therefore, smoke could not be entering Heck's apartment through the ducts. Kawa testified that appellant made numerous efforts to identify potential leaks, removed switch plate covers, and outlets, sealed them, pulled back carpet, sealed the area between the tack strip and the bottom of the wall and sealed flue pipes. Kawa stated that in his opinion, appellant did everything it could to rectify the problem. Kawa further testified that when he was in Heck's apartment he did not smell any cigarette smoke. On cross-examination however, Kawa admitted that Heck's closet smelled of cigarette smoke. Finally, Kawa testified that he never authorized Meghan Lynn to offer Heck a new apartment unit to resolve the problem.
 {¶ 30} Based on this testimony, the magistrate found, and the lower court concurred, that appellant had not eliminated the problem of cigarette smoke in Heck's apartment. Appellant asserts that Heck failed to produce any evidence by way of dry cleaning receipts or other tangible evidence, that cigarette smoke was infiltrating his apartment. We find the lack of such tangible evidence irrelevant. Whether cigarette smoke is entering an apartment is clearly a question that can be resolved through the testimony of those persons who were exposed to the apartment. The lower court heard the testimony of two witnesses who were familiar with the situation. In such a situation, "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 31} Given the above testimony, we conclude that the trial court's findings were supported by credible evidence that smoke was infiltrating Heck's apartment and that appellant had not made the repairs necessary to keep the apartment in a fit and habitable condition. The first assignment of error is not well-taken.
 {¶ 32} In its second and final assignment of error, appellant asserts that the lower court abused its discretion in awarding Heck a judgment for the full amount of the funds held in escrow plus an additional sum.
 {¶ 33} In Miller v. Ritchie (1989), 45 Ohio St.3d 222, paragraph three of the syllabus, the Supreme Court of Ohio held: "Where a landlord breaches a duty to maintain rental property and the tenant does not make the repairs, the measure of damages is the difference between the rental value of the property in its defective condition and what the rental value would have been had the property been maintained." In reaching that conclusion, however, the court further held that "reduction-in-use is not a satisfactory measure [of damages]." Id. at 226. While "[e]vidence showing reduction-in-use is relevant * * * damages should be computed by measuring the effect of such reduction-in-use (together with any other defect in the leasehold) on the rental value of the property." Id.
 {¶ 34} In adopting the magistrate's decision and awarding Heck a rent abatement of $3,834, the lower court adopted the magistrate's recommendation that: "Tenant should be given rent abatement of 50% for inability to use and enjoy his master bedroom and closet from August 2001 through July 2002[.]" The undisputed testimony in the proceeding below was that the rental value of the apartment without defects was $639 per month. Heck then testified, and the court found that he was unable to use his bedroom and that the cigarette smoke infiltrating his closet caused his clothes to smell like smoke. In Miller, supra at 227, the Supreme Court of Ohio held that in calculating damages, "[t]he tenant's undisputed testimony as to the extent of defects, even if not accompanied by the tenant's opinion on the monetary value of the defective property, is sufficient evidence on which to base a damages award. However, the finder of fact (judge or jury) must determine the monetary amount by which the defects and the reduction in use have lessened the value of the leasehold." In our view, the lower court held that the defects and reduction in use lessened the value of the leasehold by 50 percent. That there was no express testimony on the value of the property in its defective condition was not fatal to the court's damage calculation. Pleasant v. Greenfield Station Apt. (Oct. 20, 1995), 2nd Dist. No. 15282. Rather, "it is the finder of fact's role to determine the monetary value of the rental property in its defective condition." Id. Heck's testimony, regarding the effects that the smoke had on the habitability of the apartment and on his clothes, provided the court with sufficient evidence upon which to base a monetary award. Accordingly, the second assignment of error is not well taken.
 {¶ 35} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Toledo Municipal Court is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the court costs of this appeal.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Lanzinger, J., Singer, J., Concur.