[Cite as *Lloyd v. Roosevelt Properties, Ltd.*, 2018-Ohio-3163.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105721**

---

**SUSAN LLOYD**

PLAINTIFF-APPELLEE

vs.

**ROOSEVELT PROPERTIES, LTD.**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-845388

**BEFORE:** Celebrezze, J., E.T. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 9, 2018

**ATTORNEY FOR APPELLANT**

Ted S. Friedman
32901 Station Street, Suite 105
Solon, Ohio 44139


**ATTORNEY FOR APPELLEE**

Bradley Hull
3681 South Green Road, Suite 208
Beachwood, Ohio 44122

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Roosevelt Investments ("Roosevelt"), brings this appeal challenging the trial court's judgment in favor of plaintiff-appellee, Susan Lloyd ("Lloyd"), on the following causes of action: breach of warranty of habitability, constructive eviction, breach of contract, and return of security deposit. Specifically, Roosevelt argues that the trial court's findings were against the manifest weight of the evidence and based upon a misapplication of R.C. 5321.07; the trial court erred in its award of attorney fees and various compensatory damages; and the trial court erred when it determined Roosevelt unlawfully withheld Lloyd's security deposit. After a thorough review of the record and law, this court affirms in part, reverses in part, and remands for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶2} In 2013, Lloyd moved from Philadelphia, Pennsylvania, to Cleveland, Ohio, in an effort to treat her extensive health issues. Lloyd specifically sought out the Cleveland area for its world-renowned hospitals.

{¶3} Roosevelt is the owner of an apartment building located in Cleveland Heights, Ohio. The building consists of 40 individual apartment units. On December 3, 2013, Lloyd and Roosevelt entered into a written lease agreement for a period of 13 months from December 3, 2013 through December 2014. Lloyd took possession of the apartment unit on the following day, December 4, 2013. The monthly rent for Lloyd's unit was $850. At the signing of the lease, Lloyd paid a prorated amount for the month of December 2013 and a security deposit of $900. Per the lease agreement, neither party was permitted to apply Lloyd's security deposit to unpaid rental payments.

{¶4} Lloyd occupied a one-bedroom suite consisting of a living room, kitchen, one bedroom, and one bathroom. The unit was heated by a central boiler system of radiators. Lloyd's unit had three radiators; the living room, kitchen, and bedroom had individual boilers. The apartment building was advertised as a "smoke-free building."

{¶5} On the first day that Lloyd took possession of the apartment unit, December 4, 2013, she called an emergency maintenance number that was provided to her by a Roosevelt manager because she did not have heat in her apartment unit. Lloyd stated she spent the first two nights sleeping in her car because her apartment unit had no heat.[1] Based on these concerns, Lloyd requested that she be let out of the lease. However, the Roosevelt manager stated to Lloyd that "[he had] no intention of letting [Lloyd] out of [her] lease."

{¶6} Over the course of the next few months, Lloyd communicated to the Roosevelt manager various complaints regarding inadequate heat, rodent infestation, cigarette smoke, ice on the pavements and sidewalks, garbage overflow, discolored water, and faulty electricity. For instance, on January 10, 2014, Lloyd advised the manager that she saw a rat in her apartment, that she surmised had entered the apartment through a plumbing access panel in the bathroom. Lloyd also complained of a rat infestation in the basement laundry area. In February 2014, Lloyd then procured the services of the Cleveland Pest Control because Roosevelt failed to fix the rat infestation. A pest technician noted that rat droppings were found behind the plumbing access panel in Lloyd's bathroom. Rat droppings were also observed in a common area of the basement laundry area. On March 3, 2014, Roosevelt was issued a notice of code violation regarding the presence of rodents for the basement common area. On March 10, 2014, the

---

[1] It was later determined that Lloyd was not able to properly operate the radiator system herself and this was determined to be the cause of the heat issue on the first day she took possession of the premises.

Cleveland Heights chief housing inspector requested Roosevelt to provide proof of a receipt from a state-licensed exterminator correcting the infestation.[2]

{¶7} Lloyd also communicated to Roosevelt that her apartment lacked adequate heat, cigarette smoke was emanating into her apartment, and her apartment lacked drinkable water. Lloyd argued that all of these issues exacerbated her preexisting health issues.

{¶8} Lloyd paid December 2013, January 2014, and February 2014 rent payments directly to Roosevelt as was required by the rental agreement. Thereafter, Lloyd deposited her March and April 2014 rental payments with the Cleveland Heights Municipal Court. Lloyd vacated the premises on April 17, 2014.

{¶9} On July 2, 2014, Lloyd brought this action against Roosevelt in the Cleveland Heights Municipal Court. On February 5, 2015, Lloyd filed an amended complaint asserting the following causes of action: negligence, wanton misconduct, breach of warranty of habitability, constructive eviction, breach of contract, and return of security deposit. Roosevelt filed a counterclaim on February 6, 2015, for unpaid rental payments. The case was then transferred to the Cuyahoga County Court of Common Pleas on May 11, 2015, because the amended complaint sought an amount of damages exceeding $15,000. The case thereafter proceeded to a bench trial.

{¶10} On August 4, 2016, the trial court entered judgment in favor of Lloyd on her claims for breach of warranty of habitability, constructive eviction, breach of contract, and return of security deposit. The trial court determined that Roosevelt's "failure to fix these issues[3]

---

[2] In fact, the code violation was not cured for more than a year.

[3] The trial court specifically referenced the lack of adequate heat, exposure to cigarette smoke and rodents, and lack of drinkable water. *See* findings of fact at 8.

interfered so substantially with [Lloyd's] possession of the premises that she was forced to leave," thus "entitling [Lloyd] to terminate her lease and recover damages." Findings of Fact and Conclusions of Law at 8. The trial court awarded Lloyd actual damages in the amount of $10,514.15, statutory damages in the amount of $900 pursuant to R.C. 5321.16, attorney fees of $19,302.50, and court costs.

{¶11} On September 9, 2017, Roosevelt filed the instant appeal challenging the trial court's judgment. Roosevelt assigns six errors for review:

> I. The trial court's finding of liability against Roosevelt for breach of warranty of habitability, breach of contract, and constructive eviction was against the manifest weight of the evidence and was based upon a misapplication of R.C. 5321.07.

> II. The trial court erred when it determined that [Lloyd] was entitled to $19,302.50 in attorney fees pursuant to R.C. 5321.16(C).

> III. The trial court's award of $19,302.50 in attorney fees was an abuse of discretion because the award was disproportionate and unreasonable compared to the $900.00 security deposit that [Lloyd] sought to recover.

> IV. The trial court abused its discretion when it awarded $6,000.00 in damages based on [Lloyd's] rental payments and security deposit.

> V. The trial court abused its discretion when it awarded $4,514.15 in additional compensatory damages.

> VI. The trial court erred when it determined that Roosevelt violated R.C. 5321.16(B) by withholding [Lloyd's] security deposit.

Because several of Roosevelt's assignments of error contain interrelated issues of law and fact, we will address these issues together. Further, for ease of discussion, we will address Roosevelt's assignments of error out of order.

## II. Law and Analysis

### A. Manifest Weight

{¶12} In its first assignment of error, Roosevelt argues that the trial court's findings of breach of the implied warranty of habitability, breach of contract, and constructive eviction were against the manifest weight of the evidence.

{¶13} A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). An appellate court applies the same manifest weight of the evidence standard in criminal and civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶14} The appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley* at ¶ 20, citing *Tewarson v. Simon*, 141 Ohio App.3d 103, 750 N.E.2d 176 (9th Dist.2001), and *Thompkins* at 387. In weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). This presumption arises because the trier of fact had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* at 80. Thus, "to the extent that the evidence is susceptible to more than one interpretation," a reviewing court will "construe it

consistently with the [trier of fact's verdict]." *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 22 (8th Dist.), citing *Ross v. Ross*, 64 Ohio St.2d 203, 414 N.E.2d 426 (1980).

## 1. Breach of the Implied Warranty of Habitability

{¶15} Ohio's landlord-tenant statute, R.C. Chapter 5321, imposes duties on landlords that did not exist at common law and provides tenants with leverage to redress breaches of those duties. *Miller v. Ritchie*, 45 Ohio St.3d 222, 224, 543 N.E.2d 1265 (1989). Relevant to the instant case, R.C. 5321.04 sets forth the warranty of habitability and specifically requires landlords to "[c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety" and "[s]upply * * * reasonable heat at all times[.]" R.C. 5321.04(A)(1) and (6). It also requires that a landlord "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition[.]" R.C. 5321.04(A)(2). Under R.C. 5321.04(A)(2), a tenant must show that a defective condition exists that renders the premises unfit or uninhabitable. *See, e.g., Weingarden v. Eagle Ridge Condominiums*, 71 Ohio Misc.2d 7, 13, 653 N.E.2d 759 (M.C.1995), citing *Academy Spires, Inc. v. Jones*, 108 N.J.Super. 395, 261 A.2d 413 (Super.1970) (noting that the implied warranty of habitability "is not a warranty against all discomfort and inconvenience.").

{¶16} Demonstrating a breach of R.C. 5321.04 requires the tenant to demonstrate "(1) that the landlord received notice of the defective condition of the rental premises; (2) that the landlord knew of the defect; or, (3) that the tenant made reasonable but unsuccessful efforts to notify the landlord." *Eberly v. Irons,* 5th Dist. Tuscarawas No. 2006 AP 01 0004, 2007-Ohio-4240, ¶ 52, citing *Shroades v. Rental Homes*, 68 Ohio St.2d 20, 25-26, 427 N.E.2d 774 (1981). Further, R.C. 5321.07(A) provides that if a landlord fails to comply with the

obligations imposed by R.C. 5321.04 or the rental agreement, the tenant must "give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance."

{¶17} Roosevelt argues that the trial court created a manifest miscarriage of justice when it ruled in favor of Lloyd on the implied warranty of habitability claim. In particular, Roosevelt argues that there existed no evidence of housing code violations such that the violations interfered so substantially with Lloyd's possession of the premises that she was forced to leave.

{¶18} The trial court found that "there were active code violations at all relevant times" in Lloyd's apartment unit. The chief housing inspector for the city of Cleveland Heights testified that Roosevelt was cited for a code violation for a rat infestation in the basement laundry room, a common area for all building residents. Furthermore, the code violation was not deemed cured as of the date when Lloyd vacated the premises.

{¶19} Regarding the rat infestation, Lloyd testified that she observed a rat in her apartment on one occasion and heard noises indicative that rats were in the plumbing access panel located in her bathroom. Lloyd communicated her concerns to Roosevelt. Roosevelt failed to adequately address the issue in Lloyd's unit and failed to cure the rat infestation code violation. On these facts alone, we conclude that the trial court did not err in finding a breach of the implied warranty of habitability. *See Crawford v. Wolfe*, 4th Dist. Scioto No. 01CA2811, 2002-Ohio-6163 (finding a breach of R.C. 5321.04 when the landlord knew of certain defects of the kind contemplated by the statute and failed to repair them); *see also LBC Ltd. Partnership v. Stegaman*, 3d Dist. Van Wert No. 15-16-01, 2017-Ohio-2705 (finding a breach of the implied warranty of habitability where the water heater in the tenant's residence ceased to function in the months of January or February).

**{¶20}** The trial court further found that not having adequate heat, constant exposure to cigarette smoke, and lack of drinkable water exacerbated Lloyd's health concerns. Lloyd complained of cigarette smoke that emanated into her apartment, her apartment unit was not adequately heated, and the water was discolored and dirty. Lloyd also communicated all of these concerns to Roosevelt. The trial court found that measures taken by Roosevelt to correct Lloyd's complaints regarding the cigarette smoke failed, and thus, Roosevelt failed to enforce its smoke-free policy.

**{¶21}** The cigarette smoke, heat, and water issues were not found to be code violations; however, this is not dispositive on the breach of the implied warranty of habitability claim. The trial court relied upon *Heck v. Whitehurst Co.,* 6th Dist. Lucas No. L-03-1134, 2004-Ohio-4366. In *Heck*, the tenant claimed that excessive cigarette smoke had been entering his apartment. The trial court found that the landlord breached his duties under R.C. 5321.04 without a finding of code violations. On appeal, the Sixth District affirmed the trial court's findings because they were supported by credible evidence, that smoke was infiltrating the tenant's apartment and that the landlord had not made the repairs necessary to keep the apartment in a fit and habitable condition. *Heck* at ¶ 31.

**{¶22}** We note that in our review of the record, the credibility of the witnesses was a determinative factor for the trial court, and the trial court was within its purview to believe or disbelieve any or all of a witness's testimony. *Seasons Coal*, 10 Ohio St.3d at 80, 461 N.E.2d 1273. Indeed, the trial court noted that Lloyd "testified clearly and very consistently."

> A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.

*Id.* Thus, the deference we must show to factual determinations, as to cigarette smoke, heat, and water issues, made by the trier of fact so limits our review of the evidence that we cannot say that the trial court lost its way by finding that these issues supported Lloyd's claim for a breach of implied warranty of habitability. We find no such error in law in the instant case, and as noted above, we cannot disturb the issue of credibility on appeal.

{¶23} Roosevelt received notice of the multiple defective conditions in Lloyd's apartment and therefore knew of the defective conditions. Roosevelt then failed to comply with its obligations under R.C. 5321.04 by failing to remedy these conditions. Roosevelt's failure to fix these issues interfered so substantially with Lloyd's possession of the premises that she was forced to leave and terminate her lease. Lloyd's testimony satisfied the elements of R.C. 5321.07, and the trial court found her testimony to be credible. The types of complaints raised by Lloyd have been found to violate the implied warranty of habitability. *See Heck.*

{¶24} A careful review of the record indicates that the trial court's findings were supported by competent and credible evidence. The trial court's findings that not having adequate heat, constant exposure to cigarette smoke and rodents, and lack of drinkable water exacerbated Lloyd's health concerns, was supported by competent and credible evidence. Accordingly, the trial court's findings that Roosevelt breached its warranty of habitability was not against the manifest weight of the evidence.

### 2. Constructive Eviction

{¶25} Roosevelt further argues that because the apartment was in a fit and habitable condition, Lloyd did not have a right to terminate her lease, thus the trial court's findings of breach of contract and constructive eviction were against the manifest weight of the evidence.

**{¶26}** "Constructive eviction occurs when the landlord interferes with the tenant's possession and enjoyment of the premises, and the acts of interference by the landlord compel the tenant to leave." *Telecom Acquisition Corp. I v. Lucic Ents.,* 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466, ¶ 16, citing *Foote Theatre, Inc. v. Dixie Roller Rink, Inc*., 14 Ohio App.3d 456, 457, 471 N.E.2d 866 (3d Dist.1984). Through a constructive conviction, a tenant is in effect dispossessed, though not forcibly deprived of possession. *Id.,* citing *Foote Theatre* at 457-458.

**{¶27}** R.C. 5321.07(A) provides, in relevant part:

If a landlord fails to fulfill any obligation imposed upon him by section 5321.04 of the Revised Code, * * * or any obligation imposed upon him by the rental agreement, if the conditions of the residential premises are such that the tenant reasonably believes that a landlord has failed to fulfill any such obligations, or if a governmental agency has found that the premises are not in compliance with building, housing, health, or safety codes that apply to any condition of the premises that could materially affect the health and safety of an occupant, the tenant may give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance.

**{¶28}** If the landlord receives the notice and, after receipt of the notice, "fails to remedy the condition within a reasonable time considering the severity of the condition and the time necessary to remedy it, or within thirty days, whichever is sooner," and the tenant is "current in rent payments due under the rental agreement," the tenant may do one of the following:

(1) Deposit all rent that is due and thereafter becomes due the landlord with the clerk of the municipal or county court having jurisdiction in the territory in which the residential premises are located;

(2) Apply to the court for an order directing the landlord to remedy the condition *

* *[; or]

(3) Terminate the rental agreement.

R.C. 5321.07(B).

**{¶29}** As stated above, Roosevelt failed in its obligations pursuant to R.C. 5321.04, and thus, Lloyd was well within her rights to deposit the March and April 2014 rental payments with the municipal court. Moreover, Roosevelt's failure in its R.C. 5321.04 obligations constituted a constructive eviction and Lloyd was within her rights to terminate the rental agreement. Therefore, the trial court's finding in favor of Lloyd on her constructive eviction claim was also not against the manifest weight of the evidence.

### 3. Breach of Contract

**{¶30}** Roosevelt also argues that the trial court erred in finding for Lloyd on her breach of contract claim.

> In order to substantiate a breach of contract claim, a party must establish four elements: (1) a binding contract or agreement was formed; "[(2)] the nonbreaching party performed its contractual obligations; [(3)] the other party failed to fulfill its contractual obligations without legal excuse; and [(4)] the nonbreaching party suffered damages as a result of the breach."

*Prime Properties Ltd. Partnership v. Badah Ents.*, 8th Dist. Cuyahoga No. 99827, 2014-Ohio-206, ¶ 13, quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.,* 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996), citing *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995).

**{¶31}** Based on our resolution as to the implied warranty of habitability and constructive eviction claims, it follows that Roosevelt likewise breached the rental agreement. Roosevelt failed in its contractual obligations pursuant to R.C. 5321.04, and Lloyd suffered damages as a result.

**{¶32}** Accordingly, the trial court's findings of breach of the implied warranty of habitability, constructive eviction, and breach of contract were not against the manifest weight of the evidence. Lloyd's testimony satisfied the elements of R.C. 5321.07, and the trial court found her testimony to be credible.

**{¶33}** Roosevelt's first assignment of error is overruled.

### B. Withholding of the Security Deposit

**{¶34}** In its sixth assignment of error, Roosevelt argues that the trial court erred when it determined that Roosevelt violated R.C. 5321.16(B) by withholding Lloyd's security deposit.

**{¶35}** R.C. 5321.16(B) states that upon the termination of a rental agreement, the landlord may apply any money held as a security deposit to the payment of past due rent or damages caused to the premises, but only after delivering a written notice of intent to do so, along with an itemized list of the deductions. If the landlord fails to comply with this requirement, the tenant is entitled to recover the money withheld together with an amount equal to the amount wrongfully withheld, and reasonable attorney fees. *See* R.C. 5321.16(C); *Smith v. Padgett*, 32 Ohio St.3d 344, 349, 513 N.E.2d 737 (1987).

**{¶36}** R.C. 5321.16(B) also provides that a landlord may keep the security deposit and use it against unpaid rental payments. In our review of the record, we note that Lloyd's rental agreement stated that "the tenant's security deposit is NOT to be applied towards any rental payment." Therefore, the implications of the statute were contracted out by the parties. Thus, R.C. 5321.16(B) does not apply because the terms of the rental agreement prevail. Under the rental agreement, Lloyd was entitled to repayment of the security deposit within 30 days of her move out date so long as the property was not damaged. Here, it was undisputed that Lloyd did not cause any damage to the property. Therefore, Roosevelt wrongfully withheld Lloyd's

security deposit.

{¶37} Accordingly, Roosevelt's sixth assignment of error is overruled.

## C. Attorney Fees

{¶38} In its second assignment of error, Roosevelt argues the trial court erred when it determined that Lloyd was entitled to $19,302.50 in attorney fees pursuant to R.C. 5321.07. Further, in its third assignment of error, Roosevelt argues the trial court's award of attorney fees was an abuse of discretion because the award was disproportionate and unreasonable when compared to the $900 security deposit Lloyd sought to recover. These assignments of error are interrelated and will be addressed together.

{¶39} In the instant case, the trial court awarded Lloyd attorney fees pursuant to R.C. 5321.16 which sets forth the procedures, rights and obligations of landlords and tenants with regards to security deposits. R.C. 5321.16(B) provides:

> Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorneys fees under division (C) of this section.

{¶40} Further, R.C. 5321.16(C) imposes a penalty on noncomplying landlords who wrongfully withhold any or all of the security deposit from the tenant. *Padgett*, 32 Ohio St.3d at 349, 513 N.E.2d 737. If a landlord is found to have wrongfully withheld any or all of the security deposit, the landlord "is liable for damages equal to twice the amount wrongfully

withheld and for reasonable attorney fees." *Id.* at paragraph three of the syllabus.

{¶41} The Ohio Supreme Court has explained that landlord liability for double damages under R.C. 5321.16(B) arises when a landlord "both wrongfully withholds a portion of a security deposit and fails to timely provide the tenant with an itemized list of deductions is liable for damages equal to twice the amount wrongfully withheld and for *reasonable attorney fees.*" (Emphasis added.)[4] *Id.* at 348-349. However, and as the trial court noted, courts have awarded attorney fees that relate to both the security deposit claim and to defending against a landlord's counterclaim for alleged damages and/or unpaid rent when such claims are virtually indivisible. *See Lacare v. Dearing*, 73 Ohio App.3d 238, 241-242, 596 N.E.2d 1097 (11th Dist.1991); *Buck v. Georgian Manor Invests.*, 8th Dist. Cuyahoga No. 67170, 1995 Ohio App. LEXIS 1254 (Mar. 30, 1995).

{¶42} As the Ohio Supreme Court noted in *Padgett*:

If the trial court finds that a landlord has wrongfully withheld a portion of the tenant's security deposit, it shall determine the amount of reasonable attorney fees to be awarded on the basis of the evidence presented. Such determination shall not be reversed except upon abuse of discretion. *See Albreqt v. Chen* (1983), 17 Ohio App.3d 79, 83, 477 N.E.2d 1150. *Cf. Nobis v. E. A. Zicka Co.* (1986), 31 Ohio App.3d 104, 508 N.E.2d 980; *Forquer v. Colony Club*, 26 Ohio App.3d 178, 180, 499 N.E.2d 79 (10th Dist.1985).

*However, the award of attorney fees must relate solely to the fees attributable to the tenant's security deposit claim under R.C. 5321.16, and not to any additional claims. Where, as here, a tenant brings additional claims against the landlord, the tenant may not use R.C. 5321.16(C) to recover attorney fees attributable to*

---

[4] "The 'failure to comply with R.C. 5321.16(B) and to not provide the tenant with a list of itemized deductions renders the landlord liable for double damages only as to the amount wrongfully withheld and not as to the entire amount of the security deposit.'" *Moore-El v. Petrella,* 8th Dist. Cuyahoga No. 94749, 2011-Ohio-710, ¶ 8, quoting *Dwork v. Offenberg*, 66 Ohio App.2d 14, 16, 419 N.E.2d 14 (10th Dist.1979).

*the additional claims.*

(Emphasis added.) *Id.* at 349.

**{¶43}** Therefore, pursuant to R.C. 5321.16(C), the awarding of double damages is not discretionary.

> If a court determines that a landlord has wrongfully withheld a portion of a tenant's security deposit, the court *must* award double damages to the tenant. *Calhoun v. Yeager*, 4th Dist. Gallia No. 91 CA 12, 1992 Ohio App. LEXIS 1312, *6-7 (Mar. 26, 1992). Likewise, there is no requirement that a landlord act in bad faith before a tenant can recover double damages. *Smith v. Padgett*, 32 Ohio St.3d 344, 349, 513 N.E.2d 737 (1987).

(Emphasis added.) *Oldendick v. Crocker*, 2016-Ohio-5621, 70 N.E.3d 1033, ¶ 30 (8th Dist.).

**{¶44}** Roosevelt argues that Lloyd's claims and their counterclaims were clearly discernable and involved separate elements and facts apart from Lloyd's security deposit claim. We agree and find that the trial court applied R.C. 5321.16 too broadly.

**{¶45}** The trial court found that Lloyd was entitled to the entire amount of fees her attorneys expended on the case because all of the claims related to the security deposit and were not easily distinguishable from the other claims. The trial court stated:

> [I]n order for [Lloyd] to benefit from her claim for attorney fees and for the return of the security deposit, she had to prove her claims for breach of warranty of habitability, breach of contract, and constructive eviction to necessarily rebut [Roosevelt's] counterclaims for past rent due; thus, the recovery of attorney fees relating to the defense of these claims may be permitted as well.

The trial court in essence found that Lloyd could only have proved her security deposit claim by proving her other claims, while simultaneously providing a defense to Roosevelt's counterclaim for unpaid rent. Thus, the court awarded attorney fees for all the hours that Lloyd's counsel billed in the instant case.

**{¶46}** In the instant case, however, the claims are not virtually indivisible. Undeniably,

Roosevelt's claims for unpaid rent and all of Lloyd's claims are interrelated and dependent on each other. The security deposit claim, however, is not. As the trial court acknowledged in its review of the rental agreement, "the tenant's security deposit is not to be applied toward any rental payment." Thus, it follows that Roosevelt's counterclaims or Lloyd's additional claims were in no way impacted by Lloyd's ability to recover her security deposit as evidenced by the plain reading of the rental agreement. Lloyd was entitled to repayment so long as there was no property damage, which there was not.

{¶47} Under the rental agreement, Lloyd was entitled to the repayment of the security deposit within 30 days of her vacating the premises so long as the property was not damaged. As stated above, it was undisputed that Lloyd did not cause any damage to the property. Therefore, she was entitled to judgment on her security deposit claim on that basis alone, without consideration of her other claims and without consideration of Roosevelt's counterclaim.

{¶48} In our review, damages for attorney fees should have been limited to (1) the amount of legal work spent proving that Lloyd was entitled to repayment of her deposit and (2) the portion of her defense spent proving that under the terms of the rental agreement, Roosevelt was not permitted to apply the deposit towards the allegedly unpaid rent despite the language of R.C. 5321.16(B). Such a damages calculation shall take into consideration that Lloyd was entitled to the return of her security deposit, as stated above. Therefore, because the security deposit Lloyd paid to Roosevelt was $900 and was wrongfully withheld, the proper damages should have been $1800 (double damages) and an award of attorney fees relating solely to the security deposit claim. *Padgett,* 32 Ohio St.3d at 349, 513 N.E.2d 737. Therefore, based on the foregoing analysis, an award of attorney fees of $19,302.50 was an abuse of discretion.

{¶49} Accordingly, Roosevelt's second and third assignments of error are sustained.

## D. Damages

**{¶50}** In its fourth assignment of error, Roosevelt argues the trial court abused its discretion when it awarded $6,000 in damages based on Lloyd's rental payments and security deposit. In its fifth assignment of error, Roosevelt argues the trial court abused its discretion when it awarded $4,514.15 in additional compensatory damages. As these two assignments of error are interrelated, we address them together.

**{¶51}** An appellate court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. *Mtge. Electronic Registration Sys. v. Lambert*, 8th Dist. Cuyahoga No. 94681, 2011 Ohio App. LEXIS 396, 9 (Feb. 3, 2011), citing *Roberts v. U.S. Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634, 665 N.E.2d 664 (1996).

**{¶52}** The Ohio Supreme Court has noted that leases are treated as contracts and has also imposed contractual remedies for breach thereof. *See U.S. Corrs. Corp. v. Ohio Dept. of Indus. Relations*, 73 Ohio St.3d 210, 216, 652 N.E.2d 766 (1995). Therefore, to the extent that the terms of a residential lease agreement do not conflict with the Ohio Landlord-Tenant Act (R.C. Chapter 5321) and relevant case law, general principles of contract law apply to the remedies or damages available for the breach of a residential lease agreement. *Allen v. Lee*, 43 Ohio App.3d 31, 33, 538 N.E.2d 1073 (8th Dist.1987), citing R.C. 5321.12 (stating that "to the extent that [the] damages relate to claims for a breach of the lease, general contract principles govern.").

**{¶53}** Therefore, where a landlord breaches a promise to make repairs to the leased premises and the tenant does not make the repairs themselves, the proper measure of damages is the difference between the rental value of the property in its defective condition, and what the rental value would have been had the property been maintained. *Padgett*, 32 Ohio St.3d at paragraph one of the syllabus, 513 N.E.2d 737. Moreover, the Seventh District has also noted

that:

> "R.C. Chapter 5321 does not include a statutorily defined measure of damages for the breach of an express covenant in a lease by a lessor. However, the great weight of modern legal authority appears to hold that the applicable standard for damages against a lessor or landlord for the breach of a lease is the reduced rental value of the property, special damages which naturally and directly result from the breach, including loss of profits, and, in the case of a malicious breach, exemplary damages may be awarded. 51C C.J.S. (1968), Landlord & Tenant Section 247(a)(F), p. 642; 49 Am.Jur.2d (1970), Landlord and Tenant Section 187; 11 Williston on Contracts (1968), Section 1404, p. 562; 3 McDermott, Ohio Real Property Law (1966), Section 18-14A; *see also* Restatement of the Law, Property Second (1977), Landlord and Tenant Sections 7.1, 10.2, and 11.1; *Thomas v. Amoco Oil Co.* (La.App.1984), 455 So.2d 1187; *Piggy Park Enterprises, Inc. v. Schofield* (S.C.1968), 251 S.C. 385, 162 S.E.2d 705.["]

*Kostoglou v. Midkiff Ents*., 7th Dist. Mahoning No. 01 C.A. 23, 2001 Ohio App. LEXIS 5143, 16-17 (Nov. 6, 2001), quoting *Vanderpool v. Waddell*, 4th Dist. Lawrence No. 1822, 1987 WL 19853, 3 (Nov. 12, 1987).

{¶54} In the instant case, the trial court's award of compensatory damages, in excess of $10,000, was therefore an abuse of discretion. Under the claims of implied warranty of habitability, constructive eviction, and breach of contract, Lloyd was entitled to a judgment of the "reduced rental value" of the premises. The "reduced rental value" would be the diminution in value of the rental property, i.e. the $850 rental price minus the value of the rental property with the deficient heat, cigarette smoke, and rat infestation. The trial court's award of damages

beyond the "reduced rental value" calculation was an abuse of its discretion. Accordingly, we remand the matter for the trial court to determine the extent to which the judgment should be reduced to account for the impairment of Lloyd's right to peaceable and quiet enjoyment of the premises.

{¶55} Accordingly, Roosevelt's fourth and fifth assignments of error are sustained.

### III. Conclusion

{¶56} The trial court's findings in favor of Lloyd for breach of the implied warranty of habitability, breach of contract, and constructive eviction were not against the manifest weight of the evidence. Roosevelt violated R.C. 5321.16(B) by withholding Lloyd's security deposit. The trial court abused its discretion when it awarded $19,302.50 in attorney fees pursuant to R.C. 5321.07 and in awarding compensatory damages to Lloyd.

{¶57} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR